ELLIS, Judge.
The 'plaintiff, Monroe Lacaze, Instituted this suit in forma pauperis against the defendants, Frank J. Beeson, Willard Beeson and the Joslyn Manufacturing and Supply Company of Mena, Arkansas, a nonresident company authorized to do and doing business within the State of Louisiana, and its *494 liability insurance carrier, the Liberty Mutual Insurance Company, in which he is seeking' to recover damages for injuries sustained by him on August 30th, 1948 at Pitkin, Louisiana, when a truck allegedly negligently driven by defendent Frank J. Beeson, struck an automobile on a hydraulic grease lift under- which the plaintiff was working, which resulted in a car being knocked off the lift and falling on the plaintiff. The plaintiff sought to hold the defendant Willard Beeson and the Joslyn Manufacturing and Supply Company liable on an allegation that at the time of the accident “the defendant Frank Beeson was employed by defendant Willard Beeson; that they both worked for defendant Joslyn Manufacturing and Supply Company of Mena,' Arkansas, and that their job was to haul poles and piling for the said company.”
The defendant Frank Beeson filed an answer in proper person denying liability and the defendant Frank Beeson, through counsel, is defending the- suit on the ground that the defendant Frank Beeson was an in-dependant contractor and, further, that at the time of the accident he was not acting as an employee or contractor of the defendant Willard Beeson but was acting on his own authority. The other two defendants, Joslyn Manufacturing & Supply Compauiy and Liberty Mutual Insurance Company,' denied all material allegations of plaintiff’s petition and further answered “that there has never been any agency between the Joslyn Manufacturing and Supply Company and the defendants, Frank Beeson and Willard Beeson,” and that, therefore, they cannot be held liable for the actions of either.
The case was duly tried and resulted in a judgment in favor of the plaintiff and against the defendant, Frank J. Beeson, for $9,811.32 with 5% thereon from judicial demand until paid, and further fixed the fee of an expert witness at the sum of $50.00 and taxed it as 'costs in the suit. The Lower Court rejected the demands of the plaintiff against the defendant Willard Beeson,. Joslyn Manufacturing and Supply Company and Liberty Mutual Insurance Company.
From this judgment, the plaintiff was granted a suspensive and devolutive appeal without bond and the defendant, Frank J. Beeson, was granted a suspensive and devolutive appeal, suspensive according to law and devolutive upon furnishing bond in the sum of $500.00. The defendant Frank Beeson did not perfect his appeal.
The plaintiff in his brief states that he is appealing “from the portion of the judgment dismissing the claim against Joslyn Manufacturing and Supply Company and the reduction of the quantum.”
There is no doubt that it is established by the testimony practically without the least .contradiction that the negligence of the defendant Frank Beeson .was the cause of the accident and the resulting injuries to the plaintiff. Frank Beeson had broken the “A” frame on the truck which he used to load piling at Starks, Louisiana, and he brought it to the plaintiff’s shop in his home town of Pitkin, Louisiana, a distance of fifty or sixty miles, for repairs. He arrived on Saturday afternoon and' although work was done on the truck on Sunday, there was still, a small amount of work left to be done and, therefore, Beeson brought his truck back on Monday morning and backed it into plaintiff’s shop. Plaintiff’s partner, Ernest Beeson, was doing the work on this truck and the plaintiff at the time had a car up on the grease lift placing a “U” bolt in a shock absorber when Frank Beeson drove his truck with the loading boom on it out of the garage and in doing so allowed the loading boom to strike the car and knock it off of the grease rack and it fell on the plaintiff. There was no reason, from the" evidence, for defendant Frank Beeson to have struck this, car had he not been extremely negligent.
As to the liability of the Joslyn Manufacturing Company, we are of the opinion that the judgment is correct. The plaintiff contends that Frank Beeson was Joslyn’s agent and employee at- the time of the' accident, whereas Joslyn contends that there was no agency or employee relationship whatever between it and the defendant Frank Beeson, and that, as a matter of *495 fact, Beeson was an independent contractor. The plaintiff and the defendant cite, as correctly stating the test to be applied -in order to determine whether the relationship of-employer-employee or that of independent contractor exists in cases involving such a question, Crysel v. Gifford-Hill & Co., La.App., 158 So. 264, and Ravare v. McCormick & Co., La.App., 166 So. 183.
In Crysel v. Gifford-Hill & Co. the Court held:
“One contracting to do certain work according to plans and specifications prepared by contractee, but who exercises full control as to method of doing work, save that it must be up to certain standard, is an ‘independent contractor,’ for whose actions contractee is not liable, though he exercises some supervision over work to see that it is done according to contract.
“Subcontractor employed by contractor to do dirt work on state highway, who was financed by contractor and subject to his general control and supervision, held ‘independent contractor,’ and not ‘employee’ of contractor, and hence contractor was not liable for negligence of subcontractor’s employee. *
* * * * * *
“ ‘And our own courts have repeatedly held that the mere fact that a proprietor retains general supervision over work to be constructed for him by another, for the purpose of satisfying himself that the contractor carries out the stipulation of his contract, does not make him (the proprietor) responsible for the wrongs done to third persons in the prosecution of the work. Lutenbacher v. Mitchell-Borne Const. Co., 136 La. 805, 67 So. 888, 19 A.L.R. 206; Robichaux v. Morgan’s L. & T. R. & S. S. Co., 131 La. 727, 60 So. 206; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A., N.S., 632; Muldry v. Fromherz & Drennan, 142 La. 1087, 78 So. 126.’” [158 So. 265]
In Ravare v. McCormick & Co., the Court held [166 So. 183, 185]:
“What is an independent contractor ? It is, defined as ‘one who is rendering services, an independent employment or occupation, and represents the employer only as to the results of his work, and not- as the means whereby it is to be done.’ 39 C.J. § 1517, Page 1315. The most generally applied test of the relationship is the ‘right of control as to the mode of doing the work contracted for.’ Ibid, Section 1316, Faren v. Sellers, 39 La.Ann. 1011, 3 So. 363, 4 Am.St.Rep. 256; Gallagher v. Southwestern Exposition Ass’n, 28 La.Ann. 943.
“The circumstances which go to show one to be an independent contractor are the ‘independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work,-the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials and his right to control the work while it is in progress.’ 39 C.J. p. 136, § 1517.”
Each case depends upon its own facts in order to determine the question and it is, therefore, necessary that we examine the facts in the present case.
The Joslyn Manufacturing and Supply Company of Mena, Arkansas was engaged in the pole and piling business and in the furtherance of its business furnished to various producers of poles a price list showing the various prices they were willing to pay for the different length poles. They had an agent who came to Louisiana in order to buy poles for them. Among the producers of poles was Willard Beeson, one of the defendants herein, and he was furnished a list of prices which the Joslyn Company was willing to pay for poles of certain lengths and certain grades and he sold' some poles to the Joslyn Company. These poles were sold by Willard Beeson to the Joslyn Company F.O.B. the cars at Starks, Louisiana. Willard Beeson would cut and haul the poles to a pole yard at Starks, where an agent of the Joslyn Company would inspect and grade the poles which he desired to purchase. In other words, he would pick out the poles that met the requirements and needs of the Joslyn Company, whereupon Willard Bee-son would be paid 85 %■ of the purchase price and 15% was withheld' to be paid to Willard Beeson after the poles were load *496 ed oil cars at Starks, Louisiana and had arrived at Mena, Arkansas. The 15% was withheld as a protection to the Joslyn Company in order to assure it that Willard Beeson would load the poles within 60 to 90 days from the date of the purchase and before they began to rot or deteriorate. The 15% retained was approximately 5% over and above the cost of such loading and if Willard Beeson failed or refused to load the poles he forfeited the 15% retained and the Joslyn Company could then have the poles loaded.
Willard Beeson employed the defendant Frank Beeson, who was engaged in the hauling and loading of poles generally, to load the poles he sold to Joslyn Manufacturing -and Supply Company and agreed to pay him the full 15% of the purchase price retained by the Joslyn Company. When the poles which Frank Beeson loaded as a result of his contract with Willard Beeson arived at Mena, Arkansas, the Joslyn Company would make a check payable to Willard Beeson for the 15% retained, and upon receipt of this check, Willard Beeson would endorse it to Frank Beeson. It was the duty of Frank Beeson to order the railroad cars upon which to load the poles, and if there was such a delay in the loading that demurrage was due and chargeable by the railroad, such demurrage was an obligation of Frank Beeson. It was while loading the Joslyn Company poles under his contract with Willard Beeson that the “A” frame on his loading truck was broken which resulted in his taking it to his home at Pitkin, Louisiana, for repairs.
It is further shown by the record that introduced in evidence are copies of the original 'checks, each having attached thereto a copy of a statement showing the items covered by the check “in settlement with Willard Beeson” and on each statement is a deduction for insurance in different amounts.
It is further shown that a representative 'of the Joslyn Company on some occasions did request and designate certain old poles to be loaded and at times asked 'that 'certain lengths-be loaded. Under this state of facts and the law as above cited it is the contention of the plaintiff that the Joslyn company had the right to control the mode of doing the work as well as the result as “there is the testimony of Frank Beeson himself to the effect that he loaded poles and piling of a certain length at the time and place specified by the agent of the Joslyn Company.” Plaintiff then quotes an extract of this testimony. It is true that he testified “ * * * there were some old poles on the yard they told me to get * * * . By “they” he testified he meant the inspector for the Joslyn Company. However, it will be noted that in this same extract of testimony Frank Beeson was. asked the question, “Did anyone control you in regard to the operation of your work?” (A) “Not directly, only to see that the work was done correctly; * * * The Joslyn Company under the law retained the right to see that Willard Beeson or' anyone employed by him carried out the stipulations of the contract of sale between the Joslyn Company and Willard Beeson, that is, that the poles were loaded within 60 to 90 days of the date of purchase" and at least before they deteriorated or rotted. Under the facts in this case, Willard Bee-son, under the terms of the purchase agreement, was "responsible for loading the- poles, and although they were the property of the Joslyn Company from the moment they accepted them and paid 85% of the purchase-price, Willard Beeson certainly had an interest in carrying out the sales contract, that is, to load the poles or see that they were loaded for he was engaged in the pole and piling business and aside from the fact that he would have forfeited 15% of the-purchase price by such failure to carry out. his '"contract, it was also in furtherance of his general business to see that the poles-were loaded in accordance with his contract. It is true, as stated, that Joslyn made deductions for insurance but not for Frank Beeson. Such deductions were made in a. settlement with Willard Beeson. This alone would not make Frank Beeson an employee-of the Joslyn Company. In the first place, Joslyn’s entire agreement was with Willard Beeson and it is not shown that they had' any agreement, actually or implied, with Frank Beeson. Under Frank Beeson’s con *497 tract with Willard Beeson, he furnished his own means and equipment for loading the poles, and if it had been necessary for him to hire any extra labor it would have been his responsibility to do so and he could have hired whom he .pleased, when and as he pleased. Under the agreement with Willard Beeson he could load the poles as and when he pleased and by any method or mode that he thought best. This was a part of Joslyn?s purchase agreement with Willard Beeson and Joslyn looked to him to load the poles and carry out his agreement. It made no difference to Joslyn whether he employed somebody to do this for him or not. Joslyn had no right to fire Frank Beeson. If Willard Beeson breached the sales agreement by failing or refusing to load or cause to be loaded the poles in question, Joslyn could then refuse to pay him the remaining 15% of the purchase price and could use this in order to personally employ someone to carry out the loading part of the sales agreement.
The Joslyn Company in this case made no separate agreement with Willard Bee-son or anyone else with regard to the loading of the poles, for the company bought the poles F. O. B. the cars at Starks, Louisiana and retained 15% of the purchase price in the event Willard Beeson failed to carry out the entire sales agreement.
"While counsel for plaintiff has cited many cases, we do not feel that there is any necessity to discuss them for under the facts and the test as laid down in the two cases cited we are satisfied that Frank Beeson was neither an employee nor agent of the Joslyn Company and it is, therefore, not liable. In addition to the above, we are of the opinion that at the time of the accident Frank Beeson was not doing anything in the furtherance of the Joslyn Company’s business but was on a mission of his own and for his own advancement.
According to plaintiff’s statement in his brief, he is not questioning the judgment of dismissal as to Willard Beeson, however, we might add that'in our opinion the judgment of the Lower Court was also correct in dismissing plaintiff’s claim against Willard Beeson.
As to the quantum of damages, it is shown by the record that Frank Beeson was judgment proof and plaintiff only argues this phase of the case in the event that we should hold the defendants liable in solido. Although plaintiff’s injuries were most serious and of a permanent nature and his pain and suffering excruciating and while we feel that an increase would be justified under the facts, in view of Frank Beeson’s financial inability to respond for any amount and as the other defendants are not liable, we will not disturb the award.
It is, therefore, ordered that the judgment of the District Court be affirmed.
J. CLEVELAND FRUGE, Judge, sitting ad hoc.