499 So.2d 623 (1986)
Susan Leonard WILLIAMS, et al.
v.
GERVAIS F. FAVROT COMPANY, et al.
No. CA-5233.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
Rehearing Denied January 15, 1987.
Writ Denied March 13, 1987.
*624 Charles A. Verderame, Giraud, Cusimano & Verderame, New Orleans, for appellants.
Terry J. Freiberger, Montgomery, Barnett, Brown, Read Hammond & Mintz, New Orleans, for defendant-appellee Westminster City Center Properties.
Curry & Blankenship, Rene A. Curry, Jr., New Orleans, for defendant-appellees Gervais F. Favrot Co., Inc. and Fidelity & Guar. Ins. Co.
Before SCHOTT, KLEES and BYRNES, JJ.
BYRNES, Judge.
Appellant, Susan L. Williams, appeals the dismissal of her tort suit against building owner, Westminster City Center Properties (Westminster) by summary judgment and the grant of a partial summary judgment dismissing her negligence claim, against building contractor, Gervais F. Favrot Company, Inc. (Favrot) but retaining her intentional tort claim. We affirm.

FACTS
On October 14, 1984, appellant's husband, Leon Williams, was employed as a steel worker by H & W Erectors (H & W). H & W was the sub-contractor hired by Favrot, the general contractor, to perform the steel reinforcement work required in the construction of a twenty-three story building owned by Westminster and located at 1615 Poydras Street in New Orleans. On this particular day, Williams and a co-worker were engaged in setting steel rebar cages in place on the twenty-second floor to provide structural support to cement columns which were poured and formed around the steel work. The normal procedure required H & W employees to attach the base of a steel rebar cage to the top of the column which protruded from the floor below. This cage was lifted into place by a crane operated by Favrot personnel. A column "form" was then lowered over the rebar cage. The form was used to shape and hold wet cement around the steel rebar cage until the cement hardened. Favrot employees set the form in place and secured it with braces. Concrete was then poured into the form. This procedure was followed on the first twenty-one stories of the construction.
Because the column on the twenty-second floor had to support a roof, the steel rebar cages for this floor were designed to flare out at the top, allowing for attachment to the structural steel in the roof. This modification necessitated a change in the construction procedure since the column form could not be lowered over the flared rebar cages. Officials from Favrot and H & W met and decided to try a procedure by which the form was placed in position first, and the steel rebar cage was then lowered into it. After this, the cement would have been poured as usual.
For the first trial of this procedure, an outside column was chosen and the form set in place. Williams was positioned atop the form to guide the rebar cage and a co-worker rode the steel cage into the form to release the hoist hooks and attach the rebar to the floor. No bracing secured the form during this trial. As a result, when one of the hooks bumped the unbraced form, it tumbled off the building and fell to the ground below, carrying both men to their deaths.

*625 LIABILITY OF WESTMINSTER
The appellant contends that the trial court erred in granting a summary judgment in favor of Westminster because it was liable as owner of the building for damages caused by the fault of any of its agents or contractors. We do not agree.
As a general rule, property owners are not liable for the negligence of independent contractors who are performing work for the owner. In determining whether the person performing the work is an employee or an independent contractor the focus of the inquiry is directed at gauging the degree of the contractor's independence or subserviency. Davidson v. American Drug Store, 175 So. 157 (La.App. Orleans 1937). Factors which are relevant to this inquiry include the independent nature of the contractor's business, the existence of a contract for performance of a specific job, payment of a fixed price for the work, employment by the contractor of assistants who are under his control, the furnishing of necessary tools and materials by the contractor and his right to control the conduct of his work while in progress. Lacaze v. Beeson, 44 So.2d 493 (La.App. 1st Cir. 1950). The most important of these factors is the degree of control which the owner can exercise over how the contractor performs the work. Olano v. Leathers, 2 So.2d 486 (La.App. 1st Cir.1941). Thus, where the contract provides that the owner's control over the contractor is limited to providing plans and specifications and his only right is to insist that the job be performed in accordance with those plans and specification, an independent contractor relationship exists and the owner is not vicariously liable for the contractor's negligence. Crutti v. Frank, 146 So.2d 474 (La.App. 4th Cir.1962); Arledge v. Royal Globe Insurance Co., 401 So.2d 615 (La. App. 3rd Cir.1981).
This general rule of non-liability has two exceptions: first, the owner may not avoid liability if the work undertaken by the independent contractor is inherently or intrinsically dangerous; second, the owner may be held liable if he exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice. Ewell v. Petro Processors of La. Inc., 364 So.2d 604 (La.App. 1st Cir. 1978) writ denied 366 So.2d 575 (La.1979). Applying these principles to the facts of this case, we must first determine if Favrot was an independent contractor.
In support of its motion for summary judgment, Favrot introduced its contract with Westminster which provided among other things that:
The contractor shall furnish all supervision, labor, materials, tool supplies, plant and equipment, transportation and services and to do all things necessary for the full, complete and proper construction and completion of the work shown and described in this contract.
The contractor, being fully responsible for the general management of the construction operation, shall have full directing authority over the execution of the subcontracts ...
The contractor shall provide a competent field engineer and services to execute the work in accordance with this agreement and the contract documents ...
Westminster also introduced the General Conditions which formed a part of the Building Contract. Among these conditions were the following:
The contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the contract.
The contractor shall employ a competent superintendent and necessary assistance who shall be in attendance at the project site during the progress of the work ...
Finally, the affidavit of Theodore Garrison, the vice-president of Coleman Development Company (the managing agent of properties owned by Westminster) and the deposition of Ira Williams (president of H & W) were submitted by Westminster. These affidavits conclusively established *626 that Favrot controlled access to the job site, settled all differences between sub contractors and actually carried out the supervisory responsibilities imposed on it by its contract with Westminster. These documents also established that Westminster's presence at the job site was confined to periodic inspections made to insure that the work being performed was in accordance with the plans and specifications. From the foregoing, it is clear beyond any doubt that Favrot was an independent contractor as that term is defined in our jurisprudence. Cornish v. Ford Bacon & Davis Construction Company, 304 So.2d 361 (La.App. 1st Cir.1974), writ denied 305 So.2d 123 (La.1974) Lacaze v. Beeson, supra.
It is also clear that none of the exceptions to the independent contractor rule apply to this case. The fact that Westminster periodically inspected the job site to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control and does not render Westminster liable for Favrot's negligence. Stoute v. Mobil Oil Corp., 297 So.2d 276 (La.App. 3rd Cir. 1974), writ denied 300 So.2d 839 (La.1974), Beck v. Dubach Lumber Co., 171 La. 423, 131 So. 196 (1930).
Our review of the record also convinces us that Westminster did not impliedly or expressly authorize Favrot or H & W to undertake the dangerous construction procedure which led to the death of appellant's husband. It is undisputed that only Favrot and H & W personnel participated in the decision to use this procedure. Finally, we do not believe that construction work is the type of inherently dangerous activity which the exception to the independent contractor rule was intended to cover. Proper safety procedures can and do render construction work reasonably safe and we are unwilling to view such work as unavoidably dangerous.
Appellant also claims that Westminster should be held liable for breaching its duty under R.S. 40:1677 to ensure that "... there shall be built and maintained proper intermediate supports for joists. These supports shall be brick work walls, iron or steel columns, beams, trusses or girders of wood, or other material or sufficient strength." The appellant asserts that R.S. 40:1677 creates a mandatory ("shall") duty on Westminster as building owner to construct columns of "sufficient strength" to support the building.
At the outset we note that R.S. 40:1677 is a building regulation, the clear purpose of which is to ensure that the building is constructed with sufficient structural integrity. The statute does not address the method of construction. In our opinion, the duty which this statute imposes on Westminster does not encompass the risk that unsafe construction techniques will injure workers. It is aimed at ensuring the structural integrity of buildings and is intended to guard against the risk of collapse. We therefore reject appellant's contention that this statute makes Westminster liable for her husband's death.
The trial court dismissed the claims against Westminster by summary judgment. Summary judgment is appropriate if, on the basis of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, it is shown that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. Art. 966. The burden of proof is on the party seeking summary judgment. Santiago v. Equipment Leasing of California, 420 So.2d 209 (La.App. 4th Cir.1982), rev'd on other grounds 437 So.2d 971 (La.1983), writ denied 441 So.2d 1223 (La.1983).
Appellant did not submit evidence to controvert the assertions made in Westminster's supporting documents. We therefore conclude that there was no genuine issue of material fact in this case and, for the reasons cited above, find as a matter of law that Westminster is not liable for the alleged negligence of Favrot or its sub-contractor, H & W. We therefore affirm the *627 action of the trial court granting Westminster's motion for summary judgment.

LIABILITY OF FAVROT
Appellant challenges the dismissal of her negligence suit against Favrot on several grounds. She disputes the trial court's conclusion that her husband was a statutory employee of Favrot as that term is defined in R.S. 23:1061-63 and R.S. 23:1032. She also attacks those statutes as unconstitutional on due process and equal protection grounds. We first address appellant's claim that the extension of tort immunity to statutory employers is unconstitutional.
This claim is based partly on the 1975 amendment to compensation law which repealed a provision allowing certain private employees to decline coverage under the act. Appellant contends that by withdrawing this option the legislature skewed the balance of competing rights and interests which rendered the compensation scheme constitutional. We do not agree.
Although some very early cases emphasized the importance of the elective feature to the constitutionality of various compensation acts, later jurisprudence recognized that this feature was not essential and affirmed the validity of both compulsory and elective compensation schemes. See New York Central Railroad Co. v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917), Day v. Louisiana Central Lumber Co., 144 La. 820, 81 So. 328 (1919); Williams v. Blodgett Construction Co., 146 La. 841 84 So. 115 (La.1920), Miller v. Hoyle, 328 So.2d 757 (La.App. 1st Cir.1976), Flynn v. Devore, 373 So.2d 580 (La.App. 3rd Cir.1979). See also W. Malone and A. Johnson, Workers Compensation Law and Practice Sec. 38 in 13 Louisiana Civil Law Treatise (1980). We agree with the analysis presented in the above authorities and therefore reject appellant's argument that the 1975 amendment to the act rendered it unconstitutional.
To the extent that appellant's constitutional attack is directed at the increased tort immunity conferred on direct employers and principals by the 1976 amendments to the compensation act, we find that the question was settled by the Supreme Court in Bazley v. Tortorich, 397 So.2d 475 (La. 1981). See also Guinn v. Progress Drilling Inc., 398 So.2d 128 (La.App. 3rd Cir. 1981), rev'd on other grounds 401 So.2d 978 (La.1981), and the cases cited therein. The rejection of equal protection and due process attacks on Sec. 1032 in these cases was ultimately based on the court's conclusion that the legislature could rationally enact a compensation scheme which granted tort immunity to both direct and statutory employers even if one of the employers who escaped liability did not always have to pay compensation. See Malone and Johnson, supra at Sec. 38. For the reasons cited in the above authorities we also reject appellant's constitutional attack on Sec. 1032.
The appellant next argues that the statutory employer defense is unconstitutional because the contract between the direct employer and principal precludes suit by an injured employee even though that employee is not a party to the contract. We find this argument unpersuasive. It is not the contract between Favrot and H & W that binds Leon William to the Worker's Compensation Act and limits his recovery for unintentional torts; it is the nature of his work and the fact that such work falls within the trade, business or occupation of Favrot. The existence of a contract between Favrot and H & W is not, by itself, determinative of whether worker's compensation benefits will inure to employees of H & W. The contract merely serves to establish the relationship between Favrot and H & W vis-a-vis a specific undertaking. The existence of such a contract does not make all H & W employees statutory employees of Favrot. Only those who are performing work which is part of Favrot's trade business or occupation are affected. Thus, while the existence of the contract is important in establishing who is the principal and who is the direct employer, it does not directly govern appellant's right to sue in tort. We see no constitutional defect in this scheme.
*628 Having determined that the statutory employer defense is constitutional, we now turn to appellant's assertion that this defense is unavailable to Favrot since the steel work performed by H & W was outside the trade, business or occupation of Favrot.
Under R.S. 23:1032, a principal is defined as "... any person who undertakes to execute any work which is part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." Recent jurisprudence has held that for a person to be considered a principal under the Act:
"First, the `work' must be a part of the principal's `trade, business or occupation.'
Second, the principal must have been engaged in that trade, business or occupation at the time of injury. Absent either of these two conditions, the injury will not come within the scope of the Worker's compensation program." Lewis v. Exxon Corporation, 441 So.2d 192 (La. 1983).
Whether a person is considered a statutory employer for purposes of R.S. 23:1032 is a factual question determined on a case by case basis. Id. at 198.
To properly resolve this issue, we must again review the evidence submitted by Favrot in support of its Motion for Summary Judgment to determine whether, on the basis of the facts set forth in this evidence, Favrot was entitled as a matter of law to the statutory defense available under R.S. 23:1032. This inquiry leads us to first ask whether the steel work carried out by H & W and its employee, Leon Williams, was part of Favrot's "trade, business or occupation."
Among the documents submitted by Favrot in support of its motion for summary judgment was an affidavit by Favrot's vice-president which stated that "... an integral and necessary step in the construction and erection of concrete structural support columns in such high rise buildings is to install and include steel rods or rebars tied together with wire, otherwise known as "rebar cages" ..." The affidavit further stated "[t]hat the installation and inclusion of such rebar cages is a normal and integral part of the trade, business and occupation of Gervois F. Favrot Co., Inc...." These statements are sufficient to establish that the steel work H & W was performing was part of Favrot's "trade business or occupation". Brown v. Ebasco Services Inc., 461 So.2d 443 (La.App. 5th Cir.1984), after remand 462 So.2d 1235 (La. 1985).
We must next ascertain whether Favrot was engaged in that trade, business or occupation at the time of the injury. This fact seems self-evident from the circumstances surrounding this litigation. The building contract between Westminster and Favrot, and the affidavit of Favrot's vice-president establish that Favrot was acting as the general contractor in the construction of Westminster's building at the time of the accident and was generally engaged in the business of construction.
These facts being undisputed, we are satisfied that Favrot was entitled to the statutory employer defense available under the Worker's Compensation Act. Lewis v. Exxon, 441 So.2d at 197, 198. This result is in accord with the jurisprudence which uniformly extends the statutory employer status to general contractors under similar circumstances. Certain v. Equitable Equipment Co., 453 So.2d 292 (La.App. 4th Cir.1984); writ denied 459 So.2d 535 (La. 1984); Borne v. Ebasco Services, Inc., 482 So.2d 40 (La.App. 5th Cir.1986), writ denied 486 So.2d 755 (La.1986). See also Berry v. Holston Well Service, Inc., 488 So.2d 934, 936 n. 3 (La.1986); 13 Malone & Johnson, supra, Sec. 126, at 256.
Lastly, the appellant argues that she and her deceased husband were third party beneficiaries of the construction contract between Favrot and H & W and, therefore, she is entitled to recover damages for Favrot's alleged breach of this contract which resulted in her husband's death. Mrs. Williams relies upon the following *629 language incorporated in the contract between Favrot and H & W to support this contention.
"The contractor shall give all notices and comply with all laws, ordinances, rules and regulations bearing on the conduct of the work ..."
We do not construe this provision to constitute a stipulation pour autrui for the benefit of Leon Williams and other H & W employees. C.C. Art. 1978 (formerly C.C. Arts. 1890 and 1902 of the Civil Code of 1870). Moreover, this court has already ruled that the remedy for injuries for a statutory employee against a statutory employer is exclusively in worker's compensation and recovery based on breach of contract as well as tort is precluded. Redler v. Louisiana Power & Light Co., Inc., 383 So.2d 409 (La.App. 4th Cir.1980).
On the basis of the foregoing, we find that the trial court correctly granted summary judgment dismissing the appellant's unintentional tort claim against the appellees.
For the reasons cited above we affirm the judgment of the trial court at appellant's cost.
AFFIRMED.