**Russell E. WELLS**

v.

**FREEPORT–McMORAN, INC.**

Civ. A. No. 86–3595.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Dec. 8, 1988.

---

Abadie, Harang & Colvin, Peter J. Abadie, Jr., and Cameron C. Gamble, Metairie, La., for plaintiff.

Frank M. Buck Jr., Law Offices of Leon A. Aucoin, Metairie, La., for Total and First Horizon.

Lombard & Silbert, Scott E. Silbert, Metairie, La., for Total Engineering Services Team, Inc.

Liskow & Lewis, George H. Robinson, Jr., and Mark A. Lowe, Lafayette, La., for defendants.

Weigand, Weigand & Meyer, Michael D. Meyer, New Orleans, La., for First Horizon Ins. Co.

## RULING

LITTLE, District Judge.

The plaintiff, Russell Wells, brought this action to recover damages under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*, for injuries allegedly suffered while employed on a drilling platform owned by the defendant, Freeport–McMoran, Inc. The plaintiff's employer, Total Engineering Services Team ("TEST"), had contracted with the defendant to design, construct and install certain instruments as part of the production hookup on the platform. The defendant had also contracted with the third-party defendant, Cooper Brothers Welding Services ("Cooper"), for the latter to act as general contractor for

the production hookup. The plaintiff alleges that Cooper removed a portion of the steel grating from the platform and that the plaintiff subsequently injured himself when he inadvertently stepped in the resulting hole. This action against the owner of the platform ensued, and the defendant has filed this motion for summary judgment.

The defendant has submitted, in support of its motion, copies of the contracts then in force between the defendant and TEST, and between the defendant and Cooper. The defendant has also submitted a series of affidavits and copies of the plaintiff's deposition and answers to interrogatories. The plaintiff has opposed this motion with his own affidavit, and has attempted to raise a genuine issue of material fact in at least three areas: (1) whether Cooper and TEST were independent contractors of the defendant; (2) whether any negligence on the defendant's part caused the plaintiff's injuries; and (3) whether the facts require the defendant to be held strictly liable for the plaintiff's injuries. Each of these arguments will be considered in turn.

■ The plaintiff asserts that the defendant should be held vicariously liable for the negligence of Cooper and TEST in creating the dangerous condition which caused the plaintiff's injury. At the outset, the court observes that this case is controlled by the substantive law of Louisiana, as mandated by 43 U.S.C. § 1333(a)(2)(A). Since it is a well-settled principle of Louisiana law, not here challenged by the plaintiff, that a property owner cannot be held vicariously liable for the negligent acts of its independent contractor, this claim turns first on whether the companies performing work on the platform were, in fact, independent contractors of the defendant. *See Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 549 (5th Cir.1987). That determination, in turn, rests on a host of factors aimed at "ganging the degree of the contractor's independence or subserviency." *Williams v. Gervais F. Favrot Co.*, 499 So.2d 623, 625 (La.App. 4th Cir.1986). Factors which point toward independent contractor status, all of which are present

in the instant situation, include: the contractor's business existing independently of the property owner; existence of a contract specifying performance of the particular job and payment of a fixed price; and the contractor's employment of assistants under his own, rather than the property owner's control, and the use of materials and tools furnished by the contractor. *See id.* The most important factor involves the relative degree of control retained by the owner and the contractor over the contractor's conduct and method of performance of the work. *Id.* Specifically,

> [W]here the contract provides that the owner's control over the contractor is limited to providing plans and specifications and his only right is to insist that the job be performed in accordance with those plans and specification [sic], an independent contractor relationship exists and the owner is not vicariously liable for the contractor's negligence.

*Id. See also Hickman v. Southern Pacific Transportation Co.*, 262 La. 102, 262 So.2d 385 (1972).

■ As previously mentioned, the defendant has submitted copies of its contracts with TEST and Cooper. Both contracts contain, in identical language, the following provisions:

### GENERAL CONDITIONS

. . . .

7.0 PERFORMANCE

7.1 CONTRACTOR shall ... furnish all labor, supervision, machinery, equipment, materials and supplies necessary therefore; and, if permitted to subcontract with prior written consent by OWNER, shall be fully responsible for all work performed by subcontractors. CONTRACTOR shall conduct all operations in CONTRACTOR'S own name and as an independent contractor, and not in the name of, or as agent for the OWNER.

. . . .

8.0 PROTECTION OF WORK AND PROPERTY

. . . .

8.2 The CONTRACTOR shall take all necessary precaution for the safety of employees on the work, and shall comply with all applicable provisions of the Federal, State and County/Parish safety laws and building codes to prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed. He shall erect and properly maintain at all time, as required by the conditions and progress of the work, all necessary safeguards for the protection of workmen and others, and shall post danger signs warning against hazards....

....

## AGREEMENT

....

2.3.3 In its performance hereunder, the CONTRACTOR is an independent contractor, the OWNER being interested only in the results obtained. The CONTRACTOR acknowledges that neither he nor any of his employees are employees of the OWNER.

These provisions clearly demonstrate that under Louisiana law, both TEST and Cooper contracted with the defendant to establish a principal-independent contractor relationship.

Notwithstanding the starkness of the contractual agreements, the court notes that the plaintiff, in opposing this motion for summary judgment, need only "make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case, and on which [the plaintiff] will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiff, of course, need not actually prove his case; just "that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The plaintiff's evidence must simply be taken as true, notwithstanding any contradictory evidence presented by the movant, and all reasonable inferences will be drawn in the plaintiff's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505,

2511, 91 L.Ed.2d 202 (1986); *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

The evidence contained in the plaintiff's affidavit, even if taken as true and given all deference, does not contradict in any way the conclusion that the defendant contractually created principal-independent contractor relationships with both TEST and Cooper. The statements contained in the plaintiff's affidavit, at most, relate to the applicability of one of the exceptions to the rule shielding the principal from vicarious liability. As to the threshold question of independent contractor status, however, the plaintiff has failed to satisfy his burden of production.

■ Louisiana law recognizes two exceptions to a principal's immunity to vicarious liability for its independent contractor's negligence. The first exception, where the contracted work involves an ultrahazardous activity, *see Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 549–50 (5th Cir. 1987), has not been raised by the plaintiff. The second exception, which has been invoked by the plaintiff, applies when the property owner exercises control over the contractor's conduct and operational practice. *Id.; Williams v. Gervais F. Favrot Co.,* 499 So.2d 623, 625 (La.App. 4th Cir. 1986). The courts have construed this exception narrowly. In *Hemphill v. State Farm Insurance Co.,* 472 So.2d 320 (La. App. 3d Cir.1985), the court stated that the question of control

depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal. The supervision and control which is actually exercised by the principal is less significant.

*Id.* at 322 (citation omitted). Moreover, the regular presence of a representative of the owner for the purpose of monitoring progress and ensuring compliance with specifications has repeatedly been held insufficient to support a finding of control, so long as there was no "direct supervision over the step-by-step process of accomplishing the work." *Guillory v. Conoco Inc.,* 521 So.2d 1220, 1224 (La.App. 3d Cir.1988). In *Guillory,* although the owner's plant

safety program was contractually imposed upon the contractor to enforce, the owner's representative still pointed out safety concerns to the contractor's employees. The owner also ran field tests on the work in progress, even though the contractor was obligated to maintain its own field quality control program. Nonetheless, the court declined to find that the owner had retained operational control. *Id. See also Grammer v. Patterson Services, Inc.*, 860 F.2d 639, 643–46 (5th Cir.1988) (owner's representative did not exercise control by instructing contractor's personnel to employ an alternate, less stringent method of testing pipe seals in order to increase the inventory of seals which had passed inspection).

■ Having defined the limited scope of this exception, the court determines that the plaintiff has failed to meet the evidentiary standard discussed earlier for avoidance of summary judgment. By relying solely on his own affidavit, the plaintiff must overcome not only the *Celotex* standard, but the additional limitation that "affidavits ... be made on personal knowledge, ... set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). The plaintiff's affidavit contains a series of assertions regarding the presence and activity on the platform of various personnel of the defendant, including supervisors, engineers, inspection personnel, a "safety man," and production crew members. Although a construction site with more than one contractor is presumably a busy place, the plaintiff uses no names and gives no indication (with one exception discussed below) that he had any first-hand knowledge regarding who in fact was the defendant's employee, and who worked for other contractors (if the plaintiff was in fact aware at the time that there were other contractors present with their own employees). The plaintiff also testifies to the fact and extent of contact and discussions between his own foreman and the defendant's personnel, and instructions allegedly given the foreman by those unidentified individuals. These statements also lack the requisite first-hand knowl-

edge. None of this evidence may therefore be considered in assessing whether the plaintiff has raised a genuine issue of material fact.

■ The plaintiff also testifies in his affidavit that he was told occasionally by the defendant's representative to install a particular item in a different location than it had been originally placed, or to use or avoid certain walkways or areas due to safety considerations. Even assuming first-hand knowledge as to the identity of those individuals, and taking the allegations as true, they are not enough to support a finding of operational control by the defendant. As discussed earlier, the contractual relationships, which constitute the primary factor to this determination, unquestionably reserve in the defendant only the right to a final product in compliance with the given specifications. In addition, instructing the plaintiff "to re-do some trays ... because ... they didn't want it [sic] where I installed it [sic] in another location on the unit," or "exactly where they wanted us to place bulkheads for the tubing through the firewall," plaintiff's affidavit at 2, clearly falls within the defendant's right to ensure, before completion, that the unit would satisfy the specifications. Moreover, the defendant's occasional intervention for safety reasons appears no more onerous than in *Guillory* or *Grammer*, and in any event, do not supercede or contradict the independent contractor status prescribed by the contract or amount to the degree of control over the "operative detail ... of the work" necessary to impose vicarious liability on the principal. *Restatement (Second) of Torts*, § 414 comment a (1965), *quoted in Grammer*, 860 F.2d at 643–45. This court therefore holds that the defendant did not retain or exercise operational control over the contractors.

■ The plaintiff's second argument against the motion would impose direct liability against the defendant and in favor of the plaintiff, an invitee, for negligently allowing a dangerous condition to exist on the defendant's property. Although a property owner owes a duty of reasonable care to invitees, La.Civ.Code Ann. art. 2315 (West 1971), *Stoute v. Mobil Oil Corp.*, 297

**160**

So.2d 276, 280 (La.App. 3d Cir.1974), this duty does not apply to dangerous conditions created by an independent contractor. The principal's ability to have intervened and prevent the harm, by suggesting alternative conduct or methods, is irrelevant. *Ainsworth,* 829 F.2d at 551. The cases cited by the plaintiff are inapposite and do not support his theory of direct liability for negligence.

Finally, the plaintiff has advanced an argument for strict liability under Civil Code articles 2317 and 2322. This legal claim was not pleaded, and was raised for the first time in the plaintiff's memorandum of opposition to this motion. Having allowed the deadline of 4 September 1988 for amendment of the pleadings, imposed by this court in the Scheduling Order of 16 June 1988, to pass unheeded, the plaintiff will not be allowed to raise a new legal claim at this juncture.

For the foregoing reasons, the court determines that there exists no genuine issue of material fact, and that the defendant is entitled to judgment as a matter of law. The motion for summary judgment filed by the defendant, Freeport–McMoran, Inc., is therefore GRANTED. An appropriate judgment will issue.