647 So.2d 1302 (1994)
Humberto MORALES
v.
DAVIS BROTHERS CONSTRUCTION COMPANY, INC., et al.
No. 94-CA-0902.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
Writ Denied March 17, 1995.
*1304 Kerry P. Cuccia, New Orleans, for plaintiff/appellant.
Robert H. Wood, Jr., Thomas K. Wetzel, Vicky G. Neumeyer, Exxon Co., New Orleans, for defendant/appellee.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
CIACCIO, Judge.
Plaintiff, Humberto Morales, appeals a trial court judgment granting a motion for summary judgment in favor of defendant Exxon Corporation and dismissing plaintiff's action against that defendant. We affirm.
On July 7, 1988, plaintiff was driving in a westerly direction on Interstate 10 near Pearl River, Louisiana in an AMC Jeep. The single axle trailer which he was towing had a flat tire as plaintiff traveled up the slope of the I-10 bridge crossing the Pearl River. Plaintiff determined that he could not safely stop his vehicle at that time due to the absence of an emergency lane so he proceeded over the bridge. As he was traveling on the down slope of the bridge, another vehicle approached Morales' vehicle from the rear and attempted to pass him. The other driver lost control of her vehicle which rolled over into the left lane striking the trailer being pulled by plaintiff's Jeep and causing the trailer to become detached from the Jeep. Shortly thereafter, a tractor trailer gravel truck approached the crest of the bridge and allegedly attempted to pass several stopped vehicles, sideswiped a van, proceeded along the down slope of the bridge and struck the rear of plaintiff's Jeep. This impact caused the detachable top of the Jeep to disengage and be propelled over the side of the bridge. As the detachable top disengaged, it severed plaintiff's right hand at the wrist.[1]
Plaintiff filed suit against several defendants including Ashel Brumfield, the driver of the gravel truck; Davis Brothers Contractors, Inc., Brumfield's employer, and owner of the truck; and Exxon Corporation which hired Davis Brothers Contractors to haul a load of dirt from Exxon's oil treatment facility in Jay, Florida to a disposal site in Livonia, Louisiana.
In the allegations against Exxon, plaintiff alleged that Exxon is vicariously liable for the negligent acts of Brumfield and Davis Brothers because Exxon supervised and controlled the actions of those defendants. Plaintiff also alleged that Exxon is liable for its own negligence, including failure to properly train, supervise or instruct drivers, failure to ascertain whether the drivers were properly trained and instructed, or would operate vehicles in a safe and prudent manner and allowing Brumfield to operate a vehicle on its behalf under circumstances where it knew or should have known that he was *1305 not and would not be a safe and prudent driver.
Exxon filed a motion for summary judgment asserting that Davis Brothers was an independent contractor and therefore no liability could flow vicariously to it because of any negligence of Brumfield. Exxon relied on the general legal theory that a principal is not responsible for the offenses of an independent contractor.
The trial court granted Exxon's motion and dismissed plaintiff's suit as to it. Plaintiff perfects this appeal and makes the following arguments:
1) the essential elements of an independent contractor relationship do not exist between Exxon and Davis Brothers;
2) Exxon directed and controlled the operational details of the shipment and are thus vicariously responsible for Brumfield's negligence;
3) Exxon was under a non-delegable duty to safely and properly transport the contaminated dirt; and
4) Exxon's motion for summary judgment did not address the allegations of Exxon's own negligence in failing to safely and properly transport the contaminated dirt.
Appellate courts review summary judgments de novo and use the same criteria as the trial court. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Summary judgment is appropriate if, on the basis of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, it is shown that there exists no genuine issue of material fact, and that as a matter of law, mover is entitled to judgment. La.C.C.P. art. 966. The burden is on the mover and any doubt must be resolved against granting the motion. Summary judgment is not a substitute for trial on the merits.
A principal generally is not liable for the actions of an independent contractor. Williams v. Gervais F. Favrot Company, 499 So.2d 623 (La.App.4th Cir.1986), writ denied, 503 So.2d 19 (La.1987). Two exceptions to the general rule that a principal is not liable for the actions of an independent contractor exist. First, where the contractor is performing ultra-hazardous work. The work is ultra-hazardous when, as a matter of law, it can cause injury to others, even when conducted with the greatest prudence and care. Kent v. Gulf States Utilities Company, 418 So.2d 493, 498 (La.1982). Second, the owner may be held liable if he exercises control over the contractor's methods of operation or gives express or implied authorization to an unsafe practice. Williams, 499 So.2d at 625. The fact that the owner periodically inspects the job site to be sure that work is being performed in accordance with the specifications does not constitute the exercise of operational control. Id. at 626.
An independent contractor relationship exists when:
1) there is a valid contract between the parties;
2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4) there is a specific price for the overall undertaking; and
5) specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
Urbeso v. Bryan, 583 So.2d 114 (La.App.4th Cir.1991). However, the most important test in determining whether or not an independent contractor relationship exists involves the employer's control over the work. Whether the employer exercises control or supervision over the movements and services rendered by the employee is not determinative. *1306 The crucial question centers on the employer's right to exercise control. Urbeso v. Bryan, id. at 117.
In the instant case the contract between Exxon and Davis Brothers is described as a contract for continuing work and services. Exxon argues and relies on paragraph four of that contract to support the independent contractor status of Davis Brothers. The paragraph states:
It is understood and agreed that all contract work done by contractor shall meet with the approval of Exxon's representatives but that the detailed manner and method of doing the contract work shall be determined by Contractor. The Contractor is an independent contractor as to all contract work performed hereunder, and neither Contractor nor anyone used or employed by Contractor shall be deemed for any purpose to be an agent, servant, or representative of Exxon in the performance of such contract work. Exxon is interested only in the results obtained.
Further, paragraph one of the contract provides:
Contractor agrees promptly to begin and diligently to conduct the contract work hereunder until completion in accordance with plans and specifications agreed to by Contractor and Exxon. Contractor agrees to do so in a safe and workmanlike manner with the necessary crews, tools, machinery and equipment furnished and maintained by Contractor at its own cost and expense. Contractor agrees that in the performance of said contract work it shall be responsible for maintaining a safe place in which to perform the contract work and shall not create by its operations or neglect a condition which renders any work area unsafe for its employees or any other person.
Paragraph fourteen of the contract addresses cancellation of the contract between the parties and provides the penalties in the event of cancellation by Exxon. It specifically provides:
Exxon shall have the right to terminate this contract, in whole or in part. Upon receipt of any such notice from Exxon, Contractor shall cease all work under this contract and this contract shall terminate effective as of the date such notice is received by the contractor. Exxon shall assume all obligations and shall be entitled to all privileges of Contractor in connection with purchase orders issued prior to the termination of this contract and covering purchases not theretofore received and/or not paid for by Contractor. The total settlement price through the date of termination shall be calculated on the same basis as set out in Article 2 or on the basis of Contractor's cost plus a mutually agreeable amount for overhead and profit. Such basis for settlement shall be mutually agreeable between Exxon and Contractor.
In support of its argument that Exxon did not control the contract work, i.e., loading and hauling the dirt, Exxon submitted the deposition testimony of Ashel Brumfield, the truck driver. Brumfield testified that he was an employee of Davis Brothers, that Davis Brothers owned the gravel dump truck and that he watched the loading operation to insure the load was evenly distributed. According to him, he instructed the loader how to load the dirt and told the loader when to stop loading. He then tarped the truck. Brumfield also testified that Exxon neither prescribed a time schedule nor determined the route he was to take to the disposal site.
Exxon also submitted the deposition of Richard Wayne Weekley, Exxon's supervisor of mechanical activities at the oil treatment facility in Jay, Florida. Weekley testified that although he made the decisions that the material to be transported by Davis Brothers would not be packaged and needed to be loaded and transported in a leak proof dump body truck, Exxon employees did not perform the loading or transporting tasks.
In support of its motion for summary judgment Exxon also submitted deposition testimony from Marvin Davis. Davis testified that he and his brother Copeland owned Davis Brothers Contractors. He confirmed that Davis Brothers had a continuing contract *1307 with Exxon to perform hauling services but that Exxon was not its biggest or only customer. Davis also corroborated Brumfield's testimony that Davis Brothers owned the truck involved in the accident and that Brumfield was an employee of Davis Brothers.
Attached to the written contract was the rate schedule, setting forth the price for the specific services, labor, equipment and materials. In this case, the specific service to be performed by Davis Brothers was to load and haul clay-based dirt. The amount of dirt to be loaded and hauled was fixed, i.e., a finite amount, and the price was set at a fixed hourly rate.
Under the clear terms of the contract between Davis Brothers and Exxon, Davis Brothers determined the detailed manner and method of performing the contract work. Exxon merely reserved its rights to periodically inspect the work. Further, the deposition testimony of both Brumfield and Weekley indicate that Davis Brothers retained and exercised the right to control the contract work and that Exxon employees neither loaded nor transported the dirt. As to the other factors determining the existence of an independent contractor relationship, the evidence conclusively established that Davis Brothers was independent company not owned or controlled in any way by Exxon; that a contract for continuing services and a rate schedule existed between Exxon and Davis Brothers; the contract provided that Davis Brothers was to furnish labor, tools, machinery, and equipment necessary to complete the contract work; and, neither Exxon nor Davis Brothers had the right to terminate the independent contractor relationship without a potential corresponding breach for liability. Based on the foregoing, it is clear that Davis Brothers was an independent contractor as defined by our jurisprudence.
It is also clear that none of the exceptions to the independent contractor rule apply in this matter. Considering the facts of this case, we cannot say that the hauling of clay-based dirt is an ultra-hazardous or inherently dangerous activity which the exception to the independent contractor rule was intended to cover. Further, the fact that Exxon specified the type of truck to be used to haul the dirt did not constitute a right to exercise control over the contract work. Such action by Exxon is merely analogous to a distributor of frozen food specifying that a refrigerated truck be used in transporting its product.
On appeal plaintiffs argue that Exxon had a non-delegable duty to safely transport the dirt, citing section XIX.129(M)(2)(a)(i) of Title 43 of the Louisiana Administrative Code relative to natural resources, and that it was negligent in doing so.
Section XIX.129(M) addresses the offsite storage, treatment and/or disposal of nonhazardous oilfield waste generated from drilling and production of oil and gas wells and provides that the generator is responsible for the proper handling and transportation of the waste to assure its proper delivery. It then lists examples of nonhazardous oilfield waste materials, none of which describe the dirt hauled by Davis Brothers. In addition, at his deposition Weekley testified that Exxon's facility was an oil treatment facility where raw material obtained from area wells was processed to separate the oil, gas, sulphur, and saltwater. According to him, the clay-based dirt was not a by product of the facility but rather was the dirt from the area around the pumps. Furthermore, plaintiff has offered no evidence to show Exxon was negligent in any way.
In light of the evidence presented and absent any public policy prohibiting Exxon from having independent contractors working for it, we conclude that there is no genuine issue of material fact in this case, and for the reasons cited above, find as a matter of law that Davis Brothers was an independent contractor. Accordingly, the judgment of the trial court in favor of Exxon Corporation, granting its motion for summary judgment and dismissing plaintiff's claims against it, is affirmed.
AFFIRMED.
LOBRANO, J., dissents with reasons.
LOBRANO, Judge dissenting.
Respectfully, I disagree with the majority's conclusion that there exists no genuine issue of fact with respect to Exxon's control over the activities of Davis Brothers.
*1308 Richard Wayne Weekley, Exxon's supervisor of mechanical activities at the oil treatment facility in Jay, Florida, testified in his deposition that he made the decisions that the material to be transported by Davis Brothers would not be packaged and needed to be transported in a dump body truck that would not leak. His testimony also strongly suggests that he played an active role in the loading of the truck.[1] Marvin Davis, a co-owner of Davis Brothers Contractors, stated in his deposition that when Exxon used Davis Brothers' hauling services, Davis Brothers provided the equipment but Exxon employees decided what type of equipment was to be used.
Both plaintiff and Exxon cite various portions of the deposition testimony filed in the record, particularly that of Weekley and Davis, in support of their respective positions. This is not uncommon in a motion for summary judgment. However, it is also an indication that there are factual issues remaining that need to be resolved at trial. I am satisfied that the facts are not undisputed with respect to the extent of Exxon's control and supervision over the work done by Davis Brothers. Accordingly, I would reverse for trial on the merits.
NOTES
[1] The factual scenario leading to this lawsuit was obtained from the various pleadings, memoranda and depositions in the record. The correctness of those facts are not germane to the issue before us in this appeal.
[1] Apparently an employee of another company under contract with Exxon was directed by Weekley to load Davis Brothers' truck. Weekley instructed that employee as to what tractor-backhoe to use in the loading procedure. Weekley's testimony is unclear about the extent of his participation in loading, and preparing the necessary details and paperwork for the truck to make its journey to Louisiana.