hBAGNERIS, Judge.
This appeal arises out of a suit for damages for personal injuries allegedly sustained by Plaintiff-Appellant, Jeffrey E. Nippa (“Nippa”) due to an accident that occurred while Nippa, an employee of an independent contractor, was working at a facility owned by Defendant-Appellee, Chevron, USA (“Chevron”). In his lawsuit, Nippa contended that Chevron owed him a duty to provide the equipment necessary to do his job safely and that Chevron breached that duty when it failed to provide proper equipment, the lack of which was a cause of Nippa’s injuries.
On October 27, 1998, Chevron filed a motion for summary judgment seeking dismissal of Nippa’s claims against it on the basis that Chevron did not owe Nippa any duty of care. On May 3, 1999, the trial court granted Chevron’s motion for summary judgment. Nippa filed an appeal from the trial court’s ruling.
On appeal, Nippa alleges that the trial court erred in granting summary judgment in favor of Chevron. Nippa contends the following:
1. The trial court erred in finding that there was no issue of material fact as to whether Chevron was or |2whether Chevron could be held liable to Nippa under a theory of independent negligence; and
2. The trial court erred in finding that there was no issue of material fact as to whether Nippa’s employer, Benbow, was an “independent contractor” and that Chevron was not liable to Nippa for any negligence on the part of Benbow or that Chevron was liable for giving express or implied permission to use unsafe practices.
After a de novo review of the record, we find that no genuine issues of material fact exist and that Chevron is entitled to judgment as a matter of law. Therefore, we affirm the trial court’s ruling granting summary judgment.

Statement of Facts

The Romere Pass Facility (“the facility”), a processing facility owned by Chevron, was temporarily shut down in 1994 to allow for expansion of the facility’s natural gas capacity. The expansion involved the installation of new production vessels, a new dehydration unit, a pneumatic safety system and other electrical modifications. Chevron contracted with M.S. Benbow and Associates (“Benbow”) for the inspection and supervision services of the expansion of the facility. The parties signed a Master Service Agreement, which provided, in pertinent part:
[Benbow] shall provide all materials, equipment and labor required for the prompt completion of services. [Ben-bow] shall perform the services as an independent contractor and not as an employee of [Chevron] ... The equipment provided for the services shall be in first class ^operating condition ... [Benbow] warrants that it will perform its work in a workmanlike manner and guarantees the quality of its work and materials.
[Benbow] is responsible for the safe performance of the work, and shall assure that the work is performed in accordance with safe practices, and shall implement and maintain at all times safe procedures, taking all reasonable precautions to protect ... [its] personnel. The obligation to implement and maintain safe practices is that of [Benbow].
Nippa worked for Benbow as an electrical construction foreman. Nippa claims to have been injured on May 7, 1994 while attempting to manually lift and carry an electrical panel that was to be installed at the facility. At the time of the accident, the machinery ordinarily used to transport *313 heavy pieces of equipment was unavailable. Nippa claims that by retaining supervisory control over the job, Chevron assumed a duty of care toward him, as the employee of an independent contractor. Nippa asserts that by placing time pressure on him to complete the job, Chevron’s supervisor at the facility actually authorized the manual transport of the 200 pound piece of equipment, thereby breaching its duty to provide adequate machinery with which to safely transport the panel.

Law and Discussion

Appellate courts review summary judgment decision de novo. Godfrey v. Boston Old Colony Ins. Co., 97-2569 (La.App. 4 Cir. 5/27/98), 718 So.2d 455, 457; Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 583. The appellate court should affirm a summary judgment ruling only when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues of material fact and that the mover is entitled to judgment as a matter of law.” LSA-C.C.P. art 966(B). “Facts Rare material if they potentially insure or preclude recovery, affect a litigant’s ultimate success, or determine the outcome of the legal dispute.” Godfrey, supra; Walker, supra.
Article 966 of the Louisiana Code of Civil Procedure was amended in 1996 to state that summary judgments are favored. The article was amended again in 1997 to clarify issues concerning the mov-ant’s burden of proof. Subparagraph C(2) of article 966 provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
LSA-C.C.P. art. 966 C(2).
This Court explicated the 1997 Amendment to C.C.P. article 966 in Cressionnie v. Liberty Mut. Ins. Co., 98-0534 (La.App. 4 Cir. 4/8/98), 711 So.2d 364, stating as follows:
Procedurally, under the 1997 amendments to the summary judgment law, La. C.C.P. art. 966, a court’s first task on a motion for summary judgment remains the same — to determine whether the moving party’s supporting documents-pleadings, depositions, answers to interrogatories, admissions and affidavits-are sufficient to resolve all material factual issues. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker, supra at 584.
However, if the court finds, based on the evidence presented by the movant, that no genuine issues of material fact exist, the party opposing the motion for summary judgment is required to “produce factual support sufficient to establish that he will be able to ^satisfy his burden of proof at trial.” La. C.C.P. art. 966(C)(2). In meeting his burden of proof, the movant is expressly not required “to negate all the essential elements of the adverse party’s claim, action, or defense,” but only “to point out to the court that there is an absence of factual support for one or more elements.” Id. Once the movant has met his burden and the burden shifts to the party opposing the motion, the non-moving party is not allowed to rely on the allegations of his pleadings in opposition to a properly supported motion for summary judgment. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488.
Id. at 366.
In the instant case, Chevron argues that the trial court was correct in granting its *314 motion for summary judgment. It argues that since Nippa did not present any factual evidence in dispute in his opposition to Chevron’s motion for summary judgment, Nippa has raised no genuine issue of material fact, so it was therefore proper for the trial court to enter judgment for Chevron as a matter of law. We agree.
In a summary judgment proceeding, the burden of proof remains on the mover to show “that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law”. La. C.C.P. art. 966(C). Once the moving party has produced evidence to the court demonstrating that no genuine issue of material fact exists, the burden then shifts to the non-moving party to “produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.” Cressionnie, supra. After a thorough review of the record, we find that the movant, Chevron, met its burden, while the non-moving party, Nip-pa, failed to meet his. Since there are no genuine issues of material fact in this case, Chevron is entitled to a judgment as a matter of law.
| fiBenbow was an independent contractor employed by Chevron to work at the facility. The unambiguous language of the Master Service Agreement refers to Benbow as an “independent contractor” and establishes the principal/independent contractor relationship. Nippa argues that, despite the characterization in the contract, Benbow was not an independent contractor since Mark McCollister, Chevron’s project supervisor, was on hand to supervise the project at the facility on behalf of Chevron and Nippa reported to him on a daily basis. This is an erroneous conclusion. A principal is entitled to maintain supervisory control over a project done by an independent contractor in order to insure compliance with the contract terms. Williams v. Gervais F. Favrot Co., CA-5233 (La.App. 4 Cir. 12/9/86), 499 So.2d 623. It is when the principal exercises operational control of the work that the status of the independent contractor might be in doubt. Sandbom v. BASF Wyandotte Corp., 95-0335 (La.App. 1 Cir. 4/30/96), 674 So.2d 349. From the depositions of both Nippa and McCollister, it is clear that McCollister was on hand at the facility solely to insure that the project was completed in a timely fashion and in accordance with the terms of the contract, not to exert operational control over the work. Nippa and the other employees still retained the power to complete the job in a manner in which they saw fit, as long as it was completed within Chevron’s specified time frame. Since the principal is entitled to supervise its independent contractor and there is no evidence of operational control asserted by Chevron, it would be erroneous to conclude from this level of supervision exercised by Chevron that Benbow was anything other than an independent contractor.
This Court has concluded that a property owner/principal “generally [has] no duty to protect the employees of an independent contractor ... from, dangerous 17conditions brought onto the land and maintained and controlled by the independent contractor.” Verrett v. Louisiana World Exposition, Inc., CA-5950 (La. 4 Cir. 2/12/87), 503 So.2d 203. There are two exceptions to this rule. First, a principal may be held liable where the work is inherently dangerous, as a principal cannot circumvent liability for inherently dangerous activities by hiring an independent contractor to do them. Williams, supra. Second, a principal may be held liable for injuries incurred by an independent contractor when the principal expressly assumes the duty owed to the contractor’s employee or expressly or impliedly authorizes the unsafe practice in question. Id. If, by contract, the principal has retained the right to control the work done by the contractor, then it will be considered to have assumed a duty of care, and may be held liable for the injuries sustained by its contractor or its contractor’s employee. *315 Parker v. Boise Southern Co., 89-435 (La.App. 3 Cir. 10/3/90), 570 So.2d 6.
As a matter of law, the work performed by the employees of Benbow was not inherently dangerous, so the first exception does not apply here. As for the second exception, that Chevron could be held to a duty of care toward an independent contractor, there is no evidence in the record demonstrating that Chevron either assumed a duty toward Nippa or expressly or impliedly authorized the carrying of an electrical panel without mechanical assistance.
There is no doubt that McCollister was concerned about the timing of the installation of the electrical panel and that he did tell Nippa to get it in “as soon as possible.” However, Chevron had an established schedule for this project and was entitled to have one of its employees on hand to insure timely completion of the work. Mere inspection of the work done by an independent contractor and direction as to the final results of the project is insufficient to support a conclusion [sthat the principal has retained enough control over the project to defeat the principal/independent contractor immunity. Sand-bom, supra. According to the terms of the Master Service Contract, Benbow was to be responsible for the safe performance of the work and for the safety of its employees. The fact that time pressure was placed upon Nippa to get the electrical panel installed “as soon as possible” is not enough to conclude that Chevron had authorized the carriage of the panel without mechanical assistance, thereby assuming a duty of care toward Nippa, notwithstanding the principal/independent contractor relationship. By placing time pressure on Nippa, McCollister neither expressly nor impliedly authorized Nippa’s use of unsafe practices because, as a principal, Chevron is entitled to supervise its independent contractors to the extent necessary to insure compliance with the terms the contract.
The Master Service Agreement demonstrates that Benbow, not Chevron, assumed the duty to provide the materials and equipment necessary to complete the work and to provide for the safety of its employees. Nippa has failed to produce evidence demonstrating that Chevron retained control over Benbow’s work. Chevron merely retained the right to inspect the work in order to insure compliance with the terms of the contract. Nor is there any evidence that Chevron either expressly or impliedly authorized moving the electrical panel manually.
After a thorough review of the record, we find that there are no genuine issues of material fact in this case. Benbow was an independent contractor, which was contractually obligated to provide for the safety of its employees while on the Chevron site. By retaining some legitimate supervisory control, Chevron did not assume a duty of care to either Benbow or its employees. Since Nippa has failed to meet his burden as the non-moving party in a summary judgment proceeding, the ^judgment of the trial court granting Chevron’s motion for summary judgment is therefore affirmed.

CONCLUSION

Accordingly, we affirm the trial court’s ruling.

AFFIRMED.