# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30192
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2014

Lyle W. Cayce
Clerk

CYPRIAN UKUDI,

Plaintiff−Appellant,

versus

MCMORAN OIL & GAS, L.L.C.,

Defendant−Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-3020

Before SMITH, WIENER, and ELROD, Circuit Judges.

PER CURIAM:*

Cyprian Ukudi, who was injured on an offshore oil platform owned by

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-30192

McMoRan Oil & Gas, L.L.C. ("McMoRan"), appeals a summary judgment for McMoRan on his tort claims. We affirm.

I.

The accident occurred on West Cameron 294C, a platform located on the Outer Continental Shelf in the Gulf of Mexico. A brief history of the platform is necessary before turning to the accident. Three key components of the platform—the Christmas tree, the wellhead, and the surface-controlled subsurface safety valve ("SCSSV")—were installed when the well was originally drilled. At some point before McMoRan's acquisition of the platform, a previous owner, Newfield Exploration ("Newfield"), determined that the SCSSV was no longer working properly. It therefore installed another type of valve, the PB valve, to perform the same safety functions as the SCSSV, but it left the inoperative SCSSV in place instead of removing it.

McMoRan purchased the platform from Newfield in 2007 but soon decided to shut down the well because of a decrease in production. McMoRan contracted with Alliance Oilfield Services, LLC ("Alliance"), to do the work. Ukudi was an Alliance employee assigned to the West Cameron 294C operation. To oversee the project, McMoRan hired two supervisors, known as "company men": Jerome Herpin of Eagle Consulting and Kruse Gribble of Hamilton Consulting.

The Alliance crew needed to remove the Christmas tree and wellhead from the platform. One possible method is to use a wrench to loosen a set of vertical bolts, but rust prevented that. Another potential approach is to use a torch to cut the bolts, but Gribble instructed the Alliance team not to do that because of the risk of fire or explosion. As a result, the workers turned to a third option—backing out a set of hanger pins.

2

No. 14-30192

After holding a safety meeting and testing the Christmas tree for pressure, the Alliance crew began to loosen the pins. Unfortunately, unbeknownst to everyone present, a defective component in the old SCSSV had caused pressure to build up in part of the Christmas tree, causing one of the pins to eject as Ukudi was removing it, injuring him.

Ukudi sued McMoRan in state court, claiming negligence. McMoRan removed to federal court and, after discovery, moved for summary judgment, which the court granted, holding that there was insufficient evidence of McMoRan's negligence and that Alliance was an independent contractor.

## II.

Ukudi raises three possible state-law claims. First, he argues that McMoRan is liable for failing to discover and repair unreasonably dangerous conditions on the platform. Second, he contends that McMoRan is vicariously liable for the negligent acts of its company men and Alliance. Third, he urges that McMoRan is liable for failing to implement policies that could have prevented the accident.

## A.

This court reviews a summary judgment *de novo*. *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In evaluating a motion for summary judgment, we construe all the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), which, in opposing the motion, must identify specific evidence supporting its claims, *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

No. 14-30192

B.

Ukudi has not submitted sufficient evidence to survive summary judgment on his argument that McMoRan is liable for failing to discover and repair unreasonably dangerous conditions. The Louisiana Civil Code offers three possible bases for this claim: Articles 2315 and 2316, Louisiana's general negligence provisions; Article 2317, which imposes liability for injuries caused by items in the defendant's custody; and Article 2322, which imposes liability for injuries caused by the ruin of the defendant's building. Under all of these provisions, the plaintiff must show that the defendant knew or should have known of the condition that caused the harm.[1]

There is no evidence from which a jury could conclude that McMoRan knew or should have known of the pressure buildup in the Christmas tree. Ukudi notes that McMoRan did nothing to determine whether there was pressure but could have done so. He emphasizes the dangers of the pressure buildup and alleges that McMoRan did not adequately make the well file available to its company men and Alliance. *Id.* But none of this shows that McMoRan knew or should have known of the pressure, which is a necessary element of a claim.

Ukudi cites no evidence that McMoRan knew of it. The only evidence he mentions that even suggests that McMoRan should have known is a statement by a McMoRan engineer, John Underwood, that he did not "know if [*sic*] safe to assume" that there was no pressure but that "the odds of there being pressure are quite low." That testimony is ambiguous and is not enough for Ukudi to bear his burden to identify specific evidence supporting his claims.

---

[1] *See Buffinet v. Plaquemines Parish Comm'n Council*, 93-0840 (La. App. 4th Cir. 1994), writ *denied*, 651 So. 2d 269, *and writ denied*, 651 So. 2d 269, *and writ denied*, 651 So. 2d 270 (La. 1995); LA. CIV. CODE ANN. arts. 2317.1, 2322.

4

No. 14-30192

Therefore, summary judgment on the premises-liability issue was proper.

C.

Ukudi also has not submitted sufficient evidence to survive summary judgment on his claim that McMoRan is vicariously liable for the negligent acts of its company men and Alliance.  Under Louisiana law, a principal is generally not liable for the conduct of an independent contractor.  *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911–12 (5th Cir. 1997).  There are exceptions where "(1) the liability arises from ultrahazardous activities performed by the contractor on behalf of the principal or (2) the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts."  *Id.* at 912.

The first exception does not apply here, because offshore oil production is not an ultrahazardous activity.  *Ainsworth v. Shell Offshore, Inc.*, 829 F.2d 548, 550 (5th Cir. 1987).  Whether this case fits within the second exception is a more complicated question.  As Ukudi explains in his brief, "[i]t is not enough for the principal to have a company man on the platform, rather, the principal must exercise 'direct supervision over the step-by-step process of accomplishing the work such that the contractor is not entirely free to do the work in his own way'" (quoting *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)).  The principal exercises operational control only if it gives "an express or implied order to the contractor to engage in an unsafe work practice leading to injury."  *Id.*  (quoting *Coulter*, 117 F.3d at 912).  In deciding questions of operational control, the court considers both the contract between the parties and the extent to which the principal actually exercises control.  *Id.* (citing *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 193 (5th Cir. 1991)).

The contract between McMoRan and Alliance did not provide for McMoRan to retain any control over the means of accomplishing the work.

No. 14-30192

Instead, McMoRan would "exercise no control over [Alliance's] personnel nor those of its subcontractors, nor the methods or means employed by [Alliance] in the performance of the Work, [McMoRan] being interested solely in the results obtained." In support of his theory that McMoRan exercised such control in practice, Ukudi cites his own testimony that Gribble prohibited the Alliance crew from using a torch to cut the bolts and told the workers to back out the hanger pins instead. But in the same statement, Ukudi also noted that Gribble did not provide any instructions on how to loosen the pins, because the crew had been "doing it all along in almost every well . . . every day." *Id.*

This degree of involvement does not rise to the level of operational control. Although the parties have not identified any cases in which a principal told a contractor not to use one method for safety reasons but provided no further directions, this behavior is closer to the periodic inspections at issue in *Williams v. Gervais F. Favrot Co.*, 499 So. 2d 623, 626 (La. App. 4th Cir. 1986), *writ denied*, 503 So. 2d 19 (La. 1987), than to "direct supervision over the step-by-step process," *Fruge*, 337 F.3d at 564, or "an express or implied order to the contractor," *Coulter*, 117 F.3d at 912. The fact that Louisiana courts have previously emphasized the language of the contract over the extent to which the principal actually exercised control supports this conclusion. *See Hemphill v. State Farm Ins. Co.*, 472 So. 2d 320, 322 (La. App. 3d Cir. 1985). In short, the district court was correct in granting summary judgment on the vicarious-liability claims.

D.

Ukudi has not submitted sufficient evidence to defeat summary judgment on his contention that McMoRan is liable for failing to implement policies that could have prevented the accident. To prevail on such a claim under Louisiana law, the plaintiff must prove the familiar elements of duty, breach,

6

causation, and damages. *Bass v. Daves*, 753 So. 2d 991, 993 (La. App. 2d Cir.), *writ not considered*, 762 So. 2d 1094 (La. 2000). A principal generally has no duty to take affirmative steps to ensure the safety of a contractor's employees, but it may assume such a duty by contract or by later going beyond the contract and voluntarily policing the worksite for safety problems. *Graham v. Amoco Oil Co.*, 21 F.3d 643, 647 (5th Cir. 1994).

Ukudi alleges that McMoRan could have prevented his injuries by requiring its contractors to use a void-bleeding tool or to utilize two workers to back out the pins. He has not, however, identified any basis for finding that McMoRan owed him a duty to ensure his safety. McMoRan explicitly declined to assume such a duty in its contract with Alliance; instead, the contract required Alliance to "furnish all labor, supervision and training, machinery, equipment, materials and supplies."

Nor did McMoRan assume that duty through its later conduct. The only evidence of a later assumption of a duty is Gribble's decision to stop the Alliance crew from using a torch. As discussed above, this one-off statement is insufficient to support a finding that McMoRan assumed any further responsibility for Alliance's operations. Consequently, summary judgment was proper on the direct-negligence issue.

AFFIRMED.

7