**Motion for Rehearing Granted; Opinion of July 3, 2018, Withdrawn; Reversed and Remanded; and Opinion on Rehearing filed December 4, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-16-00378-CV

---

### W&T OFFSHORE INC., Appellant

### V.

### LUKE MEYERS, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2012-74366**

---

## O P I N I O N   O N   R E H E A R I N G

We grant appellee Luke Meyers's motion for rehearing, withdraw our prior opinion dated July 3, 2018, and issue this opinion on rehearing in its stead. Meyers's motion for en banc reconsideration is denied as moot.

# I. INTRODUCTION

Luke Meyers was working on an oil and gas platform off the coast of Louisiana when a crane cable snapped and caused a 62.5-pound weight to fall about 50 feet. The weight struck Meyers and crushed his foot. He sued the owner of the platform, W&T Offshore Inc. The jury charge submitted a general-negligence question rather than a premises-liability question, and the jury found W&T negligent. The trial court signed a final judgment consistent with the jury's $2.8 million verdict.

W&T moved for a judgment notwithstanding the verdict because Meyers failed to obtain a jury finding on an essential element of a premises-liability claim. The trial court denied the motion, and W&T appeals.

In this case, Texas courts must apply Louisiana substantive law as surrogate federal law under the Outer Continental Shelf Lands Act (OCSLA). *See* 43 U.S.C. § 1333(a). We agree with W&T that Louisiana law recognizes a distinction between negligent-activity and premises-liability theories of recovery and that Meyers failed to secure a jury finding on any element of his claim. Accordingly, the trial court's judgment must be reversed.

On original submission, we rendered a take-nothing judgment for W&T consistent with the ordinary remedy under Rule 279 of the Texas Rules of Civil Procedure. Meyers filed a motion for rehearing to seek a remand in the interest of justice.

Because we clarify in this appeal how a premises-liability theory should be submitted under Louisiana law, as surrogate federal law mandated by OCSLA, we remand in the interest of justice rather than render a take-nothing judgment.

## II. BACKGROUND

W&T is an oil and gas exploration and production company. It contracted for Sparrows Offshore, Inc., to inspect and service W&T's cranes in the Gulf of Mexico. Meyers worked for Sparrows and would inspect and service W&T's cranes. He worked offshore on a fourteen-day hitch. Sparrows would make recommendations to W&T for service, and W&T was responsible for ordering parts and authorizing service.

In October 2010, Meyers performed a full-day annual inspection on one of W&T's cranes located on an unmanned platform off the coast of Louisiana. Meyers informed W&T of several deficiencies, including that the anti-two-block (A2B) steel cable needed to be replaced.

Although the A2B cable appeared to be in good working condition when Meyers inspected it, the cable had been on the crane for three years. Sparrows recommends changing this type of cable every three years as a safety precaution. These cables are exposed to corrosive elements in the Gulf of Mexico, which can deteriorate the springs. A witness testified that the purpose of replacing the cables every few years is because sometimes there is internal damage that cannot be seen from the outside when visually inspected. There was evidence, however, that W&T did not order the cable, that the cable was not delivered offshore, and that the cable was not replaced.

In May 2011, Meyers returned to the platform with a coworker, Edward Huntsberry, and a W&T representative, David Broussard.[1] While Meyers and

---

[1] Broussard testified that he and his boss, Leighton Theriot, worked directly for another company, but they represented W&T at the platform. Theriot, for example, signed documents on behalf of W&T related to ordering parts for service on the crane, and he approved a job-safety form on behalf of W&T.

Huntsberry were replacing the main block, the A2B cable snapped in two places, causing the 62.5-pound A2B weight to fall. Meyers pushed Huntsberry out of the A2B weight's path, but the weight struck Meyers's foot and "crushed" it. Meyers became permanently disabled.

Broussard testified that he looked at the cable afterward, and it seemed structurally damaged, old, and weather-worn, like the elements played a part in its deterioration. Both parties' experts agreed the cable was defective. W&T's corporate representative agreed the cable was defective: "That's why it broke." The representative testified that it was W&T's responsibility to address a deficiency and that W&T was responsible for the failed cable.

There was also evidence that the crane was not designed safely because most cranes have a secondary restraint for the A2B weight to prevent it from falling if the A2B cable breaks. Further, the type of bushings on the A2B cable guides created a friction-related wear surface on the cable.

Meyers sued W&T, alleging among other things that W&T failed to warn Meyers of hidden danger aboard the platform, failed to maintain a safe work environment, and failed to inspect, maintain, and repair equipment. The jury charge included a general-negligence question: "Did the negligence, if any, of those named below proximately cause the occurrence in question?" The jury answered "Yes" for W&T and "No" for Meyers.

W&T filed a motion for a judgment notwithstanding the verdict, contending among other things that (1) Meyers waived his right to recover on a premises-defect theory by failing to secure a jury finding under either Texas or Louisiana law, and (2) W&T owed no duty of care to Meyers because he was an independent contractor. The trial court denied W&T's motion and signed a final judgment consistent with the jury's verdict.

4

On appeal, W&T contends that the trial court erred for the two reasons set forth in the motion for judgment notwithstanding the verdict, among others.

### III.    PREMISES LIABILITY VS. GENERAL NEGLIGENCE

In its first issue, W&T contends that Meyers failed to secure a necessary jury finding on his only viable theory of recovery, i.e., premises liability. Meyers contends that W&T invited error, and regardless, that the submission of a general-negligence question was proper under Louisiana law. We agree with W&T.

### A.    Texas Procedural Law and Rule 279

The parties agree that Texas procedural law applies in this case. Rule 278 of the Texas Rules of Civil Procedure requires the trial court to submit to the jury questions, instructions, and definitions that are raised by the written pleadings and the evidence. Tex. R. Civ. P. 278. Rule 279 provides, "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. If, however, elements are omitted from the charge that constitute only part of a complete and independent ground, and if other elements necessarily referable to that ground are submitted and answered, then the omitted elements may be deemed found in support of the judgment. *See Ramos v. Frito-Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990) (citing Tex. R. Civ. P. 279).

Under the rules, if the pleadings and evidence indicate that the plaintiff submitted to the jury an improper theory of recovery (e.g., general negligence) in lieu of the plaintiff's proper theory of recovery (e.g., premises liability), then the plaintiff waives the unsubmitted theory of recovery. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 469–70, 481 (Tex. 2017). If the plaintiff has waived their

5

theory of recovery by failing to request or secure findings on the theory, then a reviewing court ordinarily will render a take-nothing judgment. *See id.* at 483.

## B.     No Invited Error

As an initial matter, Meyers contends that W&T invited the error and is therefore prohibited from complaining about Meyers's failure to secure a premises-liability finding. We hold that W&T did not invite this error.

The invited error doctrine prevents a party from complaining on appeal that the trial court took a specific action that the complaining party requested. *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005). The doctrine is a form of estoppel. *See Patton v. Dallas Gas Co.*, 192 S.W. 1060, 1062 (Tex. 1917); *Heidelberg v. State*, 36 S.W.3d 668, 671 (Tex. App.—Houston [14th Dist.] 2001, no pet.). As relevant here, a defendant may be estopped from complaining that the plaintiff failed to secure a jury finding on the proper theory of recovery (e.g., premises liability) if the defendant "persuades a trial court to adopt a jury charge that [the defendant] later alleges supports an improper theory of recovery" (e.g., general negligence). *United Scaffolding*, 537 S.W.3d at 482 (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010)); *see also Saeco Elec. & Util., Ltd. v. Gonzales*, 392 S.W.3d 803, 807–08 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.) (holding that the defendant invited this type of error by submitting a proposed charge based on general negligence; the defendant "received the jury charge it asked for").

Meyers contends that W&T invited error by attaching a document titled "Plaintiff's Proposed Jury Charge" to W&T's response to the trial court's Rule 166 trial preparation order. Rule 166 of the Texas Rules of Civil Procedure authorizes a trial court to direct the parties to appear before the court and consider any matter as may aid in the disposition of the action, including but not limited to, "[p]roposed

jury charge questions, instructions, and definitions for a jury case." Tex. R. Civ. P. 166. A trial court's authority "to require the parties to 'appear before it'" in Rule 166 includes the express power to order an appearance by filing a written report. *Koslow's v. Mackie*, 796 S.W.2d 700, 703 (Tex. 1990). Rule 166 states further that the trial court "shall make an order that recites the action taken at the pretrial conference," and that "limits the issues for trial to those not disposed of by admissions, agreements of counsel, or rulings of the court." Tex. R. Civ. P. 166.

In this case, the trial court signed a pre-trial "Trial Preparation Order" that instructed the parties as follows: "Pursuant to Rule 166 of the Texas Rules of Civil Procedure, the items that are checked below must be FILED BEFORE OR by 02-06-2015." The trial court checked a box next to the following items, among others: (1) "Draft Jury Charge (if a jury fee has been paid) or Findings of Fact and Conclusions of Law. Modifications may be submitted as the trial progresses."; (2) "Exhibits. An exhibit list is required. . . ."; and (3) "Motions in Limine." W&T filed "Defendant's Trial Preparation Order." Under the heading "jury issues," W&T attached "Plaintiff's Proposed Jury Charge." The proposed charge included a general-negligence question and related definitions. The charge did not include a premises-liability question or related definitions.

On the two days immediately before trial, the court held pretrial hearings primarily to address issues related to exhibits and motions in limine. The only time the parties or court referred to the jury charge was in the context of the exhibits and motions in limine. Nothing at the pretrial hearing indicated that the court was making a ruling concerning the jury charge. In discussing the topic of a type of damages, for example, the Court said, "The evidence is coming in[. H]ow it's delineated on a Jury Charge we will decide at that time—at the time we discuss the Jury Charge . . . ."

The record does not contain a subsequent order reciting the action taken at the pretrial conference pursuant to Rule 166.

Six days into the trial, at the charge conference, the court provided the parties with a copy of the court's charge. W&T objected for various reasons, contending that "[s]ubmission of negligence as to W&T is improper." W&T stated: "Based on the Louisiana Law and Federal Law applying the Louisiana Law in an OCSL case, our position is that there is no evidence that W&T controlled the work of Mr. Meyers or presented him with an unreasonable and dangerous—unreasonably dangerous condition in which to work." W&T did not explicitly tell the trial court that the case should have been submitted on a general-negligence theory or a premises-liability theory, and W&T did not have a duty to do so. *See United Scaffolding*, 537 S.W.3d at 481.

On appeal, the only case Meyers cites in which an appellate court held that the defendant invited this type of error is *Saeco Electric & Utility, Ltd. v. Gonzales*, 392 S.W.3d 803 (Tex. App.—San Antonio 2012, pet. granted, judgm't vacated w.r.m.). But, the record in *Saeco* was markedly different for three reasons. First, in *Saeco* the trial court asked for proposed charges at the beginning of the second week of trial. *Id.* at 807. Here, the trial court asked for proposed charges through a pretrial order and told the parties that modifications could be submitted as the trial progressed. Second, in *Saeco* the defendant did not object to the submission of the general-negligence question. *See id.* Here, W&T objected to the submission of the general-negligence question. Third, in *Saeco* the trial court specifically told the parties that it was using the defendant's proposed charge. *See id.* Here, nothing in the record indicates that the trial court based its charge on W&T's pretrial submission, rather than some other source. The court did not say on the record that it was using W&T's charge, nor did the court memorialize a Rule 166 ruling, as

required by the rule, to recite the actions taken at the pretrial conference on the issue of the proposed jury charges (i.e., none).[2]

Under these circumstances, the record does not show that W&T "persuade[d] a trial court to adopt a jury charge that [W&T] later alleges supports an improper theory of recovery" (e.g., general negligence). *See United Scaffolding*, 537 S.W.3d at 482. W&T is not estopped under the doctrine of invited error from contending that Meyers failed to secure a jury finding on his proper theory of recovery. *Cf. id.* (holding that the defendant's proposing a general-negligence charge in the first trial did not persuade the trial court to submit a general-negligence charge in the second trial).

## C. Louisiana Substantive Law as Surrogate Federal Law

W&T contends that this court should apply Texas substantive law to the issue of whether Meyers secured a jury finding on a premises-liability theory because Meyers "tacitly acknowledged or consented to the application of Texas law" by requesting a jury charge that follows the Texas Pattern Jury Charges for a general-negligence claim. And in its reply brief, W&T contends that Meyers "waived the application of Louisiana law" by not pleading for the application of Louisiana law and not asking the trial court to take judicial notice under Rule 202 of the Texas

---

[2] Meyers contends in his brief that "[t]he only difference" between W&T's pretrial proposed charge and the charge ultimately submitted to the jury is that the charge places definitions of "Negligence," "Ordinary Care," and "Proximate Cause" in different places—in the general instructions versus within Question No. 1 (the negligence question). However, the charges are replete with minor differences, thus indicating that the trial court did not simply rubber-stamp and "use the [W&T] charge." *Cf. Saeco*, 392 S.W.3d at 807 (noting the trial court's statements that "it was [Saeco's] proposed charge that I used" and "I used your client's charge. I used the Saeco charge." (alteration in original)). Rather, the trial court crafted a charge that appeared similar to, though distinct from, W&T's proposed charge.

Rules of Evidence. Also in its reply brief, W&T contends that this court should presume that Louisiana substantive law is identical to Texas law.[3]

W&T agrees that Meyers's injury occurred on an oil and gas platform located off the coast of Louisiana. Accordingly, the Outer Continental Shelf Lands Act mandates the application of Louisiana substantive law as surrogate federal law in this case:

> All law applicable to the Outer Continental Shelf is federal law, but to fill the substantial 'gaps' in the coverage of federal law, OCSLA borrows 'the applicable and not inconsistent' laws of the adjacent States as surrogate federal law. Thus, a personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State, here Louisiana.

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480–81 (1981) (citations omitted). Under the statute, the Outer Continental Shelf is treated as an area of "exclusive Federal jurisdiction located within a State." 43 U.S.C. § 1333(a)(1).

Thus, Meyers's personal injury claim against W&T is a federal claim, though a court must look to Louisiana law to determine the substance of that claim because of the "gaps" in federal common law. *See Gulf Offshore*, 433 U.S. at 480–81; *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104–05 (1971); *see also Torch Operating Co. v. Bartell*, 865 S.W.2d 552, 557 (Tex. App.—Corpus Christi 1993, writ denied) (noting that a "claim under OCSLA is a claim under surrogate federal law"). Generally, a state court must apply federal law under the Supremacy Clause of the

---

[3] W&T's arguments raised for the first time in its reply brief about the presumption of Texas law and Meyers's failure to request judicial notice under Rule 202 were also not raised in W&T's motion for judgment notwithstanding the verdict. We assume without deciding that W&T preserved error in the trial court and did not waive error on appeal concerning these arguments. *But see, e.g.*, *Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 495 n.13 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) ("Arguments raised for the first time in a reply brief are waived."); *Ho & Huang Props., L.P. v. Parkway Dental Assocs., P.A.*, 529 S.W.3d 102, 115 n.6 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (same).

United States Constitution. *See, e.g.*, *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 367–70 (1990). Federal preemption arguments that affect a choice of laws can be waived. *See Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 919 (Tex. 1993). But "OCSLA does supersede the normal choice-of-law rules that the forum would apply." *Gulf Offshore*, 453 U.S. at 482 n.8.

In *De La Lastra*, the defendant waived the application of maritime law by failing to object to evidence and jury questions regarding damages which were not recoverable under maritime law. 852 S.W.2d at 920. In fact, the defendant invited error by requesting the very issue that it sought to avoid on appeal. *Id.* Meyers, however, did not invite error by submitting a general negligence question and complaining about the submission; he contends that the submission was adequate to submit his theory of the case under Louisiana law. He did not otherwise argue to the trial court that the jury charge should include Texas law.

W&T notes the familiar principle that a court may presume that foreign law is identical to Texas law absent a Rule 202 motion requesting the trial court to take judicial notice. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. Gunderson, Inc.*, 235 S.W.3d 287, 290–91 (Tex. App.—Fort Worth 2007, pet. withdrawn) (refusing to hold that the trial court erred by applying Texas law when the complaining party failed to ask the trial court to apply another state's law). But any court may notice federal or other state law on its own at any stage of the proceedings. Tex. R. Evid. 202(b)(1), (d).

Meyers was not required to plead for the application of federal or Louisiana law for the trial court, or this court, to take notice of it. *See Daugherty v. S. Pac. Transp. Co.*, 772 S.W.2d 81, 83 (Tex. 1989) ("The failure to plead sister-state law does not preclude a court from judicially noticing that law."). And Meyers had no need to request that the trial court consider federal or Louisiana law until W&T

11

challenged, after the verdict, the propriety of the jury charge. Until that point, W&T had repeatedly acknowledged that this case was governed by OCSLA and Louisiana law.[4]

Accordingly, we look to Louisiana law as surrogate federal law to determine whether Meyers obtained a jury finding under Rule 279 on a premises-liability claim.

### D.  Distinct Theories Under Louisiana Law

At the heart of this case is whether Meyers obtained a jury finding on his premises-liability theory of recovery when the jury question included only a general-negligence (i.e., negligent-activity) question.[5] In Texas, although premises-liability is a species or "branch" of negligence law, these two claims are "separate and distinct theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor." *United Scaffolding*, 537 S.W.3d at 471. Thus, a jury finding on general negligence does not allow for deemed findings on a premises-liability claim pursuant to Rule 279 of the Texas Rules of Civil Procedure. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997).

We must answer the following question: Does Louisiana law distinguish between negligent activity and premises liability, such that a jury finding on a general-negligence question will not support a judgment in a case that should have

---

[4] For example, W&T told the trial court during a pretrial hearing that "this Court ruled that that [sic] Louisiana Law applies," and, "You ruled that Louisiana Law was going to apply in this case." During the charge conference, W&T made objections based solely on Louisiana law and reiterated that the court had ruled that Louisiana law "applies in this case since it is an OCSL case and this is offshore, Louisiana." W&T based its objections to the charge "on the Louisiana Law and Federal Law applying the Louisiana Law in an OCSL case."

[5] Meyers refers to his theory of recovery as a "failure to maintain equipment." We recite in greater detail below why his claim incorporates a premises-liability theory of recovery rather than a general-negligence theory.

been tried under a premises-liability theory? W&T cites no Louisiana case directly on point, and we have found none. But W&T contends that Louisiana, like Texas, recognizes that negligent-activity and premises-liability theories of recovery are distinct. We agree with W&T.

Louisiana's delictual laws are the "equivalent of the common law tort concept." *Myers v. Dronet*, 801 So. 2d 1097, 1102 (La. Ct. App. 2001). Under the Louisiana Civil Code, a delictual action begins with Article 2315: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." *Id.* at 1103 (alteration omitted) (quoting La. Civ. Code art. 2315(A)); *see also Loescher v. Parr*, 324 So. 2d 441, 445 (La. 1975) ("Articles 2315 through 2324 of the Louisiana Civil Code comprise the code's entire chapter of legal principle regulating offenses and quasi-offenses."), *superseded by* 1996 La. Sess. Law Serv. 1st Ex. Sess. Act 1, § 1 (West). The remaining articles are "amplifications as to what constitutes 'fault' and under what circumstances a defendant may be held liable for his act or that of a person or thing for which he is responsible." *Loescher*, 324 So. 2d at 445; *see also Myers*, 801 So. 2d at 1103 ("The articles which follow Article 2315 chisel its general tenet into various forms, such as negligence, strict liability, or absolute liability.").

Article 2316 supplies the general concept of negligence: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill." *Myers*, 801 So. 2d at 1103–04 (alteration omitted) (quoting La. Civ. Code art. 2316). The elements of negligence in Louisiana are, generally: (1) the defendant owed the plaintiff a duty under the specific circumstances of the particular case; (2) the defendant breached the duty which he or she owed the plaintiff; (3) the delictual conduct was the cause-in-fact of the damage or injury; (4) the risk and resulting harm stood within the scope of protection

of the defendant's duty; and (5) the plaintiff showed actual damage. *See id.* at 1104; *see also Thibodeaux v. Trahan*, 74 So. 3d 850, 853 (La. Ct. App. 2011).

Before tort reform in 1996, several of the subsequent articles recognized strict liability for premises defects. For example, under Article 2317, courts recognized strict liability for those who had custody of "things." *See Myers*, 801 So. 2d at 1104–05. Article 2317 provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . the things which we have in our custody." La. Civ. Code art. 2317. Similarly, courts recognized strict liability of owners of buildings for damage caused by a defect or "ruin" of the building. *See Loescher*, 324 So. 2d at 446; *see also Faciane v. Golden Key Div. Ltd. P'ship*, 249 So. 3d 230, 234 nn.5–6 (La. Ct. App. May 23, 2018). But the Louisiana Legislature enacted Article 2317.1 and amended Article 2322 to replace strict liability with a negligence-based standard. *See Faciane*, 249 So. 3d at 234 nn.5–6; *see also Myers*, 801 So. 2d at 1104.

Article 2322 "specifically modifies liability under Article 2317 with respect to the owner of a ruinous building or a defective component part of that building." *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 182 (La. 2013). Article 2322 provides in relevant part:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. Civ. Code art. 2322.

For a plaintiff to hold the owner of a building liable for the damages caused by the building's ruin or a defective component under Article 2322, the plaintiff must prove: (1) ownership of the building; (2) the owner knew or, in the exercise of reasonable care, should have known of the ruin or defect; (3) the ruin or defect created an unreasonable risk of harm;[6] (4) the damage could have been prevented by the exercise of reasonable care; (5) the defendant failed to exercise such reasonable care; and (6) causation. *See Broussard*, 113 So. 3d at 182–83.

Article 2322 is applicable to fixed offshore drilling platforms, including appurtenances such as cranes. *See Moczygemba v. Danos & Curole Marine Contractors, Inc.*, 561 F.2d 1149, 1151–52 (5th Cir. 1977) (Article 2322 applicable to crane on offshore drilling platform); *see also Olsen v. Shell Oil Co.*, 365 So. 2d 1285, 1289–91 (La. 1978) (approving *Moczygemba* and the application of Article 2322 to appurtenances, and noting that a building may be uninhabited). Thus, it appears that Article 2322 provides the standard in this case involving a defective crane on an uninhabited offshore drilling platform. *See Moczygemba*, 561 F.2d at 1151–52.[7]

Although the premises-liability articles are now "negligence-based," *see Myers*, 801 So. 2d at 1104, some courts have indicated that the "general negligence"

---

[6] Although not required expressly by the statute, Louisiana courts have required proof of this element—unreasonable risk of harm—under both negligence and strict-liability versions of the statute. *See Broussard*, 113 So. 3d at 183 (citing *Entrevia v. Hood*, 427 So. 2d 1146, 1148–49 (La. 1983)).

[7] But even if Article 2322 were inapplicable, resort would be to Article 2317. *See Olsen*, 365 So. 2d at 1290 (stating that even if an offshore drilling platform were not a building within the meaning of Article 2322, liability could be shown under Article 2317 for "things"). Under the related Article 2317.1, a plaintiff must prove: (1) the property which caused the damage was in the custody of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk. *Graupmann v. Nunamaker Family Ltd. P'ship*, 136 So. 3d 863, 867 (La. Ct. App. 2013).

articles provide for recovery based on injury from a premises defect. For example, Meyers relies on the Fifth Circuit opinion in *Ukudi v. McMoran Oil & Gas L.L.C.*, in which the plaintiff alleged that the defendant was liable for failing to discover and repair unreasonably dangerous conditions on an offshore drilling platform owned by the defendant. *See* 587 F. App'x 119, 120–21 (5th Cir. 2014) (per curiam). The court indicated that the Louisiana Civil Code offered "three possible bases for this claim: Articles 2315 and 2316, Louisiana's general negligence provisions; Article 2317, which imposes liability for injuries caused by items in the defendant's custody; and Article 2322, which imposes liability for injuries caused by the ruin of the defendant's building." *Id.* at 121–22.

*Ukudi* does not stand for the proposition, however, that a jury charge under a negligent-activity theory adequately submits a premises-liability claim. *Ukudi* recognizes that under any of the statutory "bases" listed, a plaintiff still must prove that "the defendant knew or should have known of the condition that caused the harm." *Id.* at 122. Indeed, the plaintiff alleged three types of claims: a premises liability theory; a theory based on active negligence of the defendant's contractors; and the defendant's own negligence for failing to implement safety policies. *See id.* at 121. The Fifth Circuit analyzed the latter two claims separately from the premises liability claim, noting that the plaintiff would have to show the familiar elements of duty, breach, causation, and damages regarding a negligence claim. *See id.* at 123.

*Ukudi* indicates that the "general negligence" articles provide for a claim because, before the 1996 tort reform, a plaintiff in Louisiana could sue for a premises defect under two distinct theories: negligence or strict liability. *See Buffinet v. Plaquemines Parish Comm'n Council*, 645 So. 2d 631, 635 (La. Ct. App. 1994). Negligence required an extra element of proof—scienter, or the "knew or should have known" element. *See id.* at 635–36; *Silliker v. St. Landry Parish Police Jury*,

520 So. 2d 880, 885 (La. Ct. App. 1987). Since tort reform, however, the elements under a "negligence" theory and "custodial liability" theory are identical. *See Cheramie v. Port Fourchon Marina, Inc.*, 211 So. 3d 1212, 1215 (La. Ct. App. 2017); *Graupmann*, 136 So. 3d at 867.

Several Louisiana cases support the notion that negligent-activity and premises-liability claims are separate and distinct, such that a jury charge submitting one theory does not submit the other. For example, in *Kelly-Williams v. AT&T Mobility, LLC*, the court of appeals upheld the trial court's refusal to submit a general-negligence jury interrogatory in a case where a sign fell and struck the plaintiff inside an AT&T store. *See* 90 So. 3d 1071, 1077 (La. Ct. App. 2012). The jury charge included only interrogatories under the Louisiana Merchant Liability Act, which requires a plaintiff in a slip-and-fall case to prove, in addition to the usual requirements for negligence, several premises-liability issues: (1) the condition presented an unreasonable risk of harm to the claimant, and the risk of harm was reasonably foreseeable; (2) the merchant either created or had actual or constructive notice of the condition; and (3) the merchant failed to exercise reasonable care. *See id.* at 1074–75 (citing La. Stat. § 2800.6(B)).[8]

The plaintiff in *Kelly-Williams* argued that "the trial court erred by failing to include on the verdict form a jury interrogatory on the law of general negligence, as opposed to language from the [statute]." *Id.* at 1074. The plaintiff argued that "general negligence rules should have been included on the jury form, so that the jury potentially could have found AT&T liable under either general negligence law, the Louisiana Merchant Liability law, or both." *Id.* at 1075. The court noted that the

---

[8] Nothing in the statute affects any liability that a merchant may have under Articles 2317 or 2322. *See* La. Stat. § 2800.6(D).

plaintiff objected "to her case becoming exclusively a premises liability case due to the limited scope of the verdict form." *Id.*

The court in *Kelly-Williams* held that the trial court did not err by omitting general negligence interrogatories. *Id.* at 1076. The court noted that when a "trip and fall accident is allegedly the result of a specific act of an employee and not solely the result of a condition found on the premises, the principles of negligence are applicable." *Id.* at 1075 (quoting *Frelow v. St. Paul Fire & Marine Ins. Co.*, 631 So. 2d 632, 635 (La. Ct. App. 1994)); *see also Chester v. Wal-Mart Stores*, *Inc.*, Civ. A. No. 91-1554, 1994 WL 532634, at *1 (E.D. La. Sept. 27, 1994) ("When the accident is solely the result of a condition found on the premises, general negligence principles do not apply and courts must apply [the Merchant Liability Act]."). The court distinguished this case from one involving active negligence, in which an employee was using a vacuum cleaner, and the plaintiff tripped on the cord. *See id.* (citing *Crooks v. Nat'l Union fire Ins. Co.*, 620 So. 2d 421 (La. Ct. App. 1993)). In *Kelly-Williams*, there was no evidence of "any analogous action on the part of AT&T employees [that] caused the sign to fall." *Id.* The court held, "In the absence of any evidence suggesting negligence on the part of any employee, it cannot be said that the trial court erred in failing to include general negligence in the jury form." *Id.* at 1076.

In the *Crooks* case, there was evidence that the plaintiff was injured due to a Wal-Mart employee's active negligence while vacuuming. *See Crooks*, 620 So. 2d at 423. The trial court included negligence and Merchant Liability Act instructions in the charge, but the court omitted a general-negligence interrogatory related to Wal-Mart's employee. *See id.* at 424–25. The court of appeals "agree[d] with the plaintiff's argument that the jury was prevented from considering the actions or conduct of the Wal-Mart employee" and that the trial court "should have included

18

an interrogatory to the jury as to the applicability of the conduct of the store employee under general negligence principles." *Id.*

Although *Kelly-Williams* and *Crooks* dealt with a different premises-liability statute than the one we are confronted with in this case, the decisions are sufficiently analogous to show that Louisiana courts indeed recognize a distinction between "general negligence" (i.e., negligent activity) and premises liability. Under Louisiana law, negligence and premises-liability claims require plaintiffs prove different, albeit similar, elements. *Compare Thibodeaux*, 74 So. 3d at 853 (elements of negligence), *with Broussard*, 113 So. 3d at 182–83 (elements of premises liability under Article 2322), *and Graupmann*, 136 So. 3d at 867 (elements of premises liability under Article 2317.1).

Accordingly, we hold that general negligence and premises liability are different theories of recovery under Louisiana substantive law for purposes of Rule 279. Under the rule, W&T is entitled to reversal of the trial court's judgment if the proper theory of recovery is premises liability because the jury charge in this case did not submit a premises-liability question. *See United Scaffolding*, 537 S.W.3d at 469–70. We must now determine the proper theory of recovery.

### E. Proper Theory of Recovery

To determine a plaintiff's proper theory of recovery under Rule 279, courts look to the source of the plaintiff's injury, the pleadings and allegations, and the evidence presented at trial. *See id.* at 479. Meyers was injured when a defective crane cable snapped and caused part of the crane to fall on his foot. Both parties' experts agreed the cable was defective. Meyers pleaded that W&T failed to warn Meyers of hidden danger aboard the platform, failed to maintain a safe work environment, and failed to inspect, maintain, and repair equipment. There was no allegation or evidence presented at trial that any W&T employee or representative was engaged

19

in any activity at or around the time of the injury to cause the cable to break. Meyers's theory of liability was based on W&T's failure to replace the cable after Meyers had told W&T six months earlier that the cable needed to be replaced. In sum, Meyers alleged and proved that W&T owned the platform and failed to remedy a known defective condition.

This case presents a clear example of a premises-liability theory. *See Kelly-Williams*, 90 So. 3d at 1074–76 (no error to submit only premises-liability interrogatories when a falling object struck a child); *see also Moczygemba*, 561 F.2d at 1151–52 (assuming error when the trial court failed to instruct the jury under Article 2322 in a case involving the fall of a crane from an offshore drilling platform).

Accordingly, the jury's answer to the general-negligence question cannot support a recovery in this case, and Meyers failed to request or secure findings to support his premises-liability claim. *See United Scaffolding*, 537 S.W.3d at 483. W&T's first issue is sustained.

## F.    Remedy

As mentioned above, the ordinary remedy under Rule 279 when a plaintiff fails to secure a jury finding on their proper theory of recovery is the rendition of a take-nothing judgment. *See id*. In his motion for rehearing, however, Meyers asks this court to remand in the interest of justice.

When reversing a trial court's judgment, a court of appeals must render the judgment that the trial court should have rendered unless a remand is necessary for further proceedings or the interests of justice require a remand for another trial. *See* Tex. R. App. P. 43.3. This court has broad discretion to remand in the interest of justice. *Ahmed v. Ahmed*, 261 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.]

2008, no pet.). Appellate courts have remanded in the interest of justice "when a decision has clarified the way in which a claim should be submitted to the jury." *Berkel & Co. Contractors, Inc. v. Lee*, 543 S.W.3d 288, 308 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 840–41 (Tex. 2000)). Courts have also remanded in the interest of justice if a case was "tried on an incorrect legal theory or to establish and present evidence regarding an alternate legal theory." *Id.*; *see also Morrow v. Shotwell*, 477 S.W.2d 538, 541–42 (Tex. 1972) (remanding in the interest of justice rather than rendering a take-nothing judgment when the plaintiff "tried his case on a wrong theory").

If Texas law governed this case, rendition of a take-nothing judgment would be appropriate. *See Torrington*, 46 S.W.3d at 840 (noting that a remand in the interest of justice would not be appropriate when the distinction between negligent-activity and premises-liability claims was "well established by the time the case was decided"). But as W&T acknowledges in response to Meyers's motion for rehearing, Louisiana case law provides "little discussion of how to actually submit the different theories, or what happens when a plaintiff (like Meyers) tries a case under one theory and submits a different theory." Indeed, there is a dearth of authority on the subject.

In Louisiana, when appellate courts review a judgment rendered pursuant to a jury verdict under erroneous instructions, the "review tends to involve trial de novo for all practical purposes" whereby the appellate court is "in effect, a court of original jurisdiction," free to make its own factual determinations. *Higgins v. Johnson*, 349 So. 2d 918, 925 (La. Ct. App. 1977); *see Gonzales v. Xerox Corp.*, 320 So. 2d 163, 164–65 & n.1 (La. 1975). Appellate courts are required by statute to "render any judgment which is just, legal, and proper upon the record." La. Code Civ. Proc. art. 2164. The purpose of this statute is to "give the appellate court complete freedom to do justice on the record irrespective of whether a particular legal point or theory was

21

made, argued, or passed on by the court below." *Id.* cmt. a. (citing Leon D. Hubert, Jr., *The Theory of a Case in Louisiana*, 24 Tul. L. Rev. 66 (1949)); *see also* Hubert, *supra*, at 69, 74–75 (noting that "the theory of a plaintiff as to the nature of his case does not prevent him from shifting his theory[,] and his failure to make a required change in theory will not prevent the court from deciding the case on the proper theory"; discussing the "change of theory on appeal" where a plaintiff "has tried and argued the case below on theory *A* and on appeal for the first time presents theory *B*, on the same facts," and noting that an appellate court could remand for further evidence, which "would be superior to [a system] in which the court admits that a plaintiff should win on the established facts if theory *B* is applied to them, but refuses to apply theory *B* because it was not argued below").

In *Crooks*, for example, the appellate court held that the jury was misled when the trial court failed to submit a general-negligence interrogatory instead of a premises-defect interrogatory. *See* 620 So. 2d at 424–25. The court proceeded to conduct a de novo review of the record, determine the preponderance of the evidence, and render a judgment that was just and lawful—a judgment for the plaintiff on a general-negligence theory. *See id.* at 425, 430.

In this case, we have clarified how a Texas court should submit a Louisiana premises-defect theory to a jury. And, the case was tried on an incorrect general-negligence theory. These principles were not well established under Louisiana law at the time the case was decided. Accordingly, we may exercise discretion to remand this case in the interest of justice. *See Torrington*, 46 S.W.3d at 840–41; *Morrow*, 477 S.W.2d at 541–42; *Berkel*, 543 S.W.3d at 308.

## IV.   DUTY

On original submission, W&T presented another ground for rendition of a judgment in favor of W&T based on Meyers's status as an employee of an

independent contractor. In its second issue, discussed in two pages of the brief, W&T asks this court to render a judgment that Meyers take nothing "because there is no evidence or finding of control." W&T bases this argument on the notion that a property owner does not owe a duty of care to an independent contractor unless the property owner retains or exercises control over the contractor's work. *See Nippa v. Chevron, USA*, 774 So. 2d 310, 314 (La. Ct. App. 2000) (reciting the general rule that an owner has no duty to protect employees of an independent contractor from dangerous conditions brought onto the land and maintained and controlled by the independent contractor, with one of the exceptions being that the owner retained the right to control the work done by the contractor); *see also Thomas v. A.P. Green Indus., Inc.*, 933 So. 2d 843, 852 (La. Ct. App. 2006) (stating general rule that a premises owner is not vicariously liable for the negligence of an independent contractor unless the owner retained control over the contractor's work or expressly or impliedly approved the unsafe work practice that led to the injury).

Meyers contends that W&T's premises had a material defect—specifically, the A2B cable—and W&T failed to replace the cable after being advised to do so. Thus, Meyers brings a direct liability claim against W&T and is not seeking to recover on a theory of vicarious liability for Sparrows' negligence. *See Thomas*, 933 So. 2d at 852. The parties' experts agreed that the cable was defective. And W&T acknowledges in its briefing that it "owes a premises-liability duty to the independent contractor as an invitee." Indeed, under Louisiana law, a property owner owes a duty of care to independent contractors for the property owner's own negligence. *See id*. A property owner like W&T has a "duty of exercising reasonable care for the safety of persons on its premises and a duty of not exposing such persons to unreasonable risks of injury or harm." *Id.* "This duty extends to employees of

23

independent contractors for whose benefit the owner must take reasonable steps to ensure a safe working environment." *Id.*

Accordingly, underlying W&T's argument is an unstated assumption that Sparrows, and not W&T, created the dangerous condition in this case. *See Nippa*, 774 So. 2d at 314. *See generally Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225–26 (Tex. 1999). But on appeal, W&T does not explain how Sparrows created the dangerous condition in this case or identify any evidence that Sparrows created the dangerous condition.

Although the evidence was disputed, there was evidence that W&T failed to procure the new A2B cable through its own negligence. For example, Broussard testified that sometimes W&T's orders get lost in the system or overlooked. Based on one of W&T's documents that was an exhibit at trial, Broussard opined that the order was not property completed either because it got lost somewhere or it was denied. Several witnesses testified that a new A2B cable was not found on the platform before the accident. Huntsberry testified that he had seen something like this happen before—where recommendations were made to W&T, yet W&T did not do anything to follow up. The record contains evidence that W&T did not order the parts necessary to change the A2B cable until after Meyers was injured.

In sum, regardless of whether there is any evidence that W&T controlled Meyers's work, W&T still owed a duty to Meyers for W&T's own negligence as a premises owner. *See Thomas*, 933 So. 2d at 852.

W&T's second issue is overruled.

## V.   CONCLUSION

The judgment against W&T is reversed, and the case is remanded for additional proceedings consistent with this opinion.


/s/    Ken Wise
        Justice


Panel consists of Justices Christopher, Brown, and Wise.