| FLOYD THOMASSIE | * | NO. 2023-CA-0749 |
| --- | --- | --- |
| VERSUS | * | |
| | | COURT OF APPEAL |
| SOUTHERN HERITAGE | * | |
| CONSTRUCTION, LLC, | | FOURTH CIRCUIT |
| MICHAEL T. RYAN, | * | |
| BEVERLY P. WATTS, RIVER | | STATE OF LOUISIANA |
| RENTAL TOOLS, INC., ABC | * * * * * * * | |
| INSURANCE COMPANY, AND | | |
| XYZ INSURANCE COMPANY | | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 66-237, DIVISION "B"
Honorable Michael D. Clement
* * * * * *
**Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

**ATKINS, J. CONCURS IN THE RESULT.**

Leo J. Palazzo
Jason J. Markey
Mario A. Arteaga, Jr.
Davin R. Savoy
PALAZZO LAW FIRM, APLC
732 Behrman Highway
Suite F & G
Gretna, LA 70056

Scott Allen Decker
THE LAW OFFICES OF SCOTT A. DECKER, LLC
3324 N. Causeway Boulevard
Metairie, LA 70002

James F. Kreihs
ATTORNEY AT LAW
200 Jewel Street, Suite B
New Orleans, LA 70124

COUNSEL FOR PLAINTIFF/APPELLANT

Michael S. Futrell
CONNICK AND CONNICK, L.L.C.
3421 N. Causeway Blvd., Suite 408
Metairie, LA 70002

COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED.**
**MAY 15, 2024.**

Floyd Thomassie ("Thomassie"), the appellant in this case was electrocuted and fell during the course and scope of his work on a construction site. He alleges that he suffered significant injuries to his back, neck, and feet, requiring multiple surgeries. He sued the owner of the jobsite, among others, seeking compensation for his injuries. On summary judgment, the district court dismissed appellant's claim against the property owner, holding that, "There is no evidence under any theory of liability that [the property owner] is liable to the plaintiff for the injuries sustained." For the reasons set forth below, we disagree with that holding and reverse.

Thomassie was employed by A-1 Steel Erectors, Inc. ("A-1"). A-1 was hired by Southern Heritage Construction, L.L.C. ("Southern Heritage") as a subcontractor to complete a portion of the renovation work on the jobsite. The jobsite or "Property" is a building located in Belle Chasse, Louisiana. The Property is leased by the defendant, River Rental Tools, Inc. ("River Rental").[1]

River Rental's central argument is that it owes Thomassie no duty having ceded all operational control and possession of the Property to Southern Heritage at the time Thomassie was injured. Thomassie argues, conversely, that River Rental had implicitly accepted a duty to hire an electrical contractor to ensure that

---

[1] River Rental Realty is the owner and lessor of the Property. It is owned by some of the same principals as River Rental Tools, Inc. In this opinion, River Rental is referred to as the property owner.

electricity was turned off in the work area. Thomassie also argues that River Rental retained some operational control by virtue of its internal safety policies that it failed to follow.

***Summary of facts.***

The renovation contract between River Rental and Southern Heritage was not memorialized in a typical written contract. A representative of River Rental met with a representative of Southern Heritage at the Property. The River Rental representative pointed out the work to be done and Southern Heritage submitted a written estimate of the cost of completion and terms for payment. The written estimate[2] for the job provided, "All electrical work to be done by others."

On August 29, 2019, the day of the accident, Thomassie began his work day on another site. As work was stalled on that site, Thomassie was moved to the River Rental job about 11 a.m. He had missed a 7 a.m. meeting at the site at which the day's work was discussed, but a co-worker familiarized him with the work sufficiently to begin preparation to "hang a beam" in the metal building's superstructure. Thomassie and the co-worker were both foremen with many years of experience in this type of work. Southern Heritage's foreman, Mike Ryan ("Ryan"), was a licensed electrician, but River Rental had decided to hire an electrical contractor to perform the electrical work. That contractor was not on the job until after the accident that forms the basis of this suit.

Thomassie noted that there was an electrical junction box in the way of the proposed beam. He volunteered to move the junction box. A-1's foreman and its owner were present earlier in the day when Ryan announced that he had turned off

---

[2] In a one-page document dated October 24, 2018, entitled "Estimate", Southern Heritage outlines a scope of work to be performed. It is addressed to River Rental. This document will be referred to as the Contract.

2

the electrical switch controlling the junction box. The A-1 foreman passed that information to Thomassie. The foreman also told Thomassie that he had already been pulling wires in preparation for moving other electrical equipment that was in the path of the construction. Thomassie testified in deposition that he saw many of the discarded wires lying on the floor.

The junction box was fairly high in the building. The foreman held a 16-foot extension ladder for Thomassie to reach the box. Thomassie first tried to pull the wires out of the box by hand. Failing that, he took wire-cutters out of his pocket and tried to cut the wire. When the cutter made contact with the live wire, Thomassie was knocked off the ladder and fell the fifteen feet to the concrete floor. As he described the fall, the foreman "caught" him as he landed on his feet. He fractured both his heels and suffered injury to his spine. He alleges that he has been in great pain ever since and is unable to walk more than very short distances now. He is limited to riding a scooter around his home and to do other activities outside the home. The record indicates that he had five surgeries to repair his heels and three more surgeries to install an electrical stimulator in his spine to lessen the pain from his heels. He testified that the stimulator has helped with the pain but has fallen far short of restoring his normal function.

### District court proceedings.

Thomassie sued Southern Heritage, Ryan, and River Rental. The petition alleges that the combined negligence of the defendants caused his accident. After a substantial amount of discovery had been completed River Rental filed its motion for summary judgment.[3] In its motion, River Rental argues that it had cleared its

---

[3] Southern Heritage also filed a motion for summary judgment, which was withdrawn before the hearing.

personnel from the site and turned over control to the contractors. Thomassie generally raises two factual theories that would support a finding of liability for River Rental. First, the estimate prepared by Southern Heritage negates any responsibility for "electrical work". The argument follows that River Rental should have hired an electrical contractor or had other personnel on hand to manage that portion of the work. Second, Thomassie alleges that River Rental failed to follow its own safety procedures as defined by its in-house safety manual. The manual requires the following safety practices required by the safety manual were not observed on the River Rental jobsite: (1) electrical circuits were not tagged and locked out; (2) an aluminum ladder, as opposed to wooden or fiberglass, was used around electrical equipment; (3) no job safety meetings were held to advise the contractors of River Rental safety policies and procedures; and (4) no electrical contractor was on site at the time that River Rental knew electrical work would be required.

Having heard these arguments of fact and law, the trial court granted the summary judgment, ruling that there is nothing whatsoever in the record that places a duty on River Rental to protect Thomassie's safety.

*Analysis.*

A motion for summary judgment may only be granted when the moving party proves that there is no genuine issue as to any material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A genuine issue of fact is one about which reasonable factfinders could disagree. *King v. Town of Clarks*, 2021-01897, p. 1, (La. 2/22/22), 345 So. 3d 422, 422. On appeal of a summary judgment, our court must review the pleadings and evidence *de novo*.

*Robertson v. Kearney Companies, Inc.,* 2020-0605, p. 3, (La. App. 4 Cir. 3/25/21), 315 So. 3d 931, 935.

A contract has the effect of law for the parties. La. C. C. art. 1983. Where there is an agreement by two or more parties whereby obligations are created, there is a contract. La. C. C. art. 1906. Contracts need not be written in any particular form. La. C. C. art. 1927. As we observed above, there is very little writing that memorializes the agreement between River Rental and Southern Heritage. At some point after River Rental received the Contract, work began.

The essence of River Rental's argument is that Southern Heritage is an independent contractor that is solely responsible for the means and methods of performance of the Contract. It is a generally accepted rule of law that an owner who has hired an independent contractor has no duty to the contractor's employees. *Nippa v. Chevron, USA*, 1999-2953, p. 6 (La. App. 4 Cir. 11/15/00), 774 So. 2d 310, 314, *writ denied,* 2000-3420 (La. 2/9/01), 785 So. 2d 823. In *Nippa*, our court acknowledged exceptions to the general rule when the undertaking is ultra-hazardous or when the owner retains operational control of the work. *Id.* As we observed above, the Contract makes it clear that River Rental retained operational control of all electrical work. That is the effective meaning of the sentence, "All electrical work to be done by others." Having accepted the Contract in this form, River Rental imposed upon itself the duty to retain an electrical contractor to supervise all electrical work or to provide its own personnel to do so. River Rental's argument that it had no employees on site is without merit because jurisprudence makes it clear that retaining the operational control is the key, not the exercise of the retained control. *McDaniel v. R.J.'s Transportation, L.L.C.,* 53,667, p. 9 (La. App. 2 Cir. 1/13/21), 310 So. 3d 760, 765.

5

Thomassie offers the added argument that River Rental failed to follow its own internal safety manual in the manner recited above. We do not find that River Rental's adoption of safety procedures imposes any additional or different duty on River Rental on this set of facts. The purpose served by the manual is to educate us on rational steps that River Rental could have taken to prevent Thomassie's accident. A factfinder could find that River Rental's statements of proper safety precautions are steps that should have been taken by River Rental to prevent accidents in this situation. That possibility presents a genuine issue of fact that makes summary judgment inappropriate in this case.

***Conclusion.***

For the above and foregoing reasons we reverse the summary judgment and remand for further proceedings in accord with this decision.

**REVERSED AND REMANDED.**